## Willis Pittman, guardian, *v*. John W. Lamb.

Chancery.   *Practice.*   *Discretion of Chancellor.*   *Case in judgment.*

> P. sold and conveyed a tract of land to L. Afterwards P. was declared a lunatic, and a guardian appointed for him. The guardian filed a bill in chancery to set aside the conveyance to L., on the grounds that P. was *non compos mentis* at the time of said conveyance, and that it was obtained in fraud. The Chancellor referred these questions to a jury, who found for the defendant, and the court rendered a decree dismissing the bill. The complainant appealed, and assigned for error the action of the court in giving and refusing instructions to the jury, and in overruling a motion for a new trial of the issues referred. *Held*, that it was entirely discretionary with the Chancellor to refer the issues to a jury, or try them himself, and that after making an order of reference he might have revoked it before trial, or have disregarded the finding of the jury when made; and that his action in reference to the issues before the jury could not be pronounced erroneous.

Appeal from the Chancery Court of Choctaw County.

Hon. P. P. Bailey, Chancellor.

This case is sufficiently stated in the opinion of the court.

*T. J. & F. A. R. Wharton*, for the appellant, filed a brief too elaborate for publication, and they do not wish it abridged.

*Hemingway & Harris*, for the appellees.

Sanity is a natural condition of man. The presumption of such condition is strong, and should not be overthrown, except by clear and satisfactory proof. The line of demarcation between minds very weak, yet having sufficient understanding to transact the ordinary affairs of life, and those minds not having quite enough understanding to transact such affairs, is very uncertain; and the dividing line between minds capable of attending to important business, and weak minds only capable of attending to unimportant business, is still more dim. Observation furnishes us with examples every day, where the weak-minded transact their business as badly as a *non compos mentis* could. Whether a person is declared *non compos mentis* is frequently determined by accidental causes, as the desire of his relatives to get control of his property, or his own or their desire to avoid any of his acts. When a man is proved to have

been of weak understanding and eccentric habits and notions all of his life, but capable of managing his affairs, as is the case with James Patterson, a court or jury should require the clearest and most satisfactory proof of insanity to invalidate a fair and just transaction had with him. Imbecility of mind does not disqualify a person to make a contract, when he is not altogether deprived of the faculty of reason. 2 Kent, Com. 452, 453. It is difficult to judge whether an imbecile mind has passed beyond the line of sanity into insanity. 2 Greenl. Evid. § 371. A court or jury should be furnished with clear and decisive proof, before declaring that such a mind has changed its normal condition of imbecility.

The decree of the court below was in accordance with the facts established by the proof. The weight of evidence was decidedly in favor of the appellee; and if all of the exceptions taken by the appellant to the proceedings in the court below were properly before this court, there would be no reason for disturbing the verdict of the jury or the decree of the court.

CAMPBELL, J., delivered the opinion of the court.

On the 13th of March, 1873, James Patterson sold and conveyed one hundred and sixty acres of land for $800 cash to the appellee. On the 17th of April, 1873, Patterson was, by the verdict of a jury empanelled for the purpose according to the statute in such cases, found to be unsound in mind, and incapable of managing his affairs; and the appellant, being appointed his guardian, afterwards exhibited this bill to vacate the deed of Patterson to the appellee, on the grounds that it had been executed when Patterson was mentally incapable of making the contract, and that the appellee had fraudulently deceived and imposed on Patterson, and thereby obtained the deed. The appellee denied the *gravamen* of the bill; and, after depositions taken, the Chancellor ordered that a jury come to try the issues of alleged mental incapacity of Patterson at the time he made the deed, and of fraud on the part of the appellee in obtaining the deed. A jury came and tried these issues, and found both in favor of the appellee. The complainant moved to set aside this verdict, and, the motion being denied, the Chancellor proceeded to a final hearing of the cause on the

pleadings and evidence and said verdict of the jury, and decreed in favor of the appellee, and dismissed the bill. This decree was appealed from, and it is assigned for error that the Chancery Court erred in its action upon the instructions to the jury in the trial of said issues, in overruling the motion for a new trial of said issues, and in refusing to grant the relief prayed for by said bill.

The two grounds of error assigned, as to the action of the court on the trial by the jury, and in refusing to grant a new trial, are disposed of adversely to the appellant by a consideration of the fact that in such a case as this it is entirely discretionary with the Chancellor to refer an issue to a jury, or to try it himself; and that after he has made an order of reference he may revoke it before it is tried, or disregard the finding of the jury when made. Being discretionary, his action in reference to the issues before the jury cannot be pronounced erroneous. *Cook* v. *Bay*, 4 How. (Miss) 485; *Dunn* v. *Dunn*, 11 Mich. 285; 2 Dan. Ch. Pl. & Prac. (3d Am. ed.) 1115.

The only question to be considered is, whether upon the whole record the final decree denying relief and dismissing the bill is correct. The evidence fails to show satisfactorily either that at the time of making the deed Patterson was mentally incapable of making a contract, or that the deed was improperly obtained by the appellee.

*The decree is correct and is affirmed.*