CARTER v. STUDDARD ET AL.

[79 South, 225, Division B.]

1. EQUITY. *Dismissal.*

It is improper practice for a chancery court to sustain a motion at the conclusion of the complainant's evidence, to strike out the evidence and give judgment for the defendant, without, having the evidence of the defendant before the chancellor, and without requiring the defendant to rest his case upon complainant's evidence.

2. EVIDENCE. *Opinion. Logs and lumber.*

In an action for damages for failure to furnish logs to be sawed according to contract, the evidence of timber estimaters, timber haulers and lumber buyers as to the cost of hauling logs or lumber and the demand for the lumber and costs of manufacturing, was competent to show the amount of damages.

3. APPEAL AND ERROR. *Disposition.*

Where in a chancery case the defendant at the close of plaintiff's evidence moves to strike out the evidence, and for judgment, and the motion is sustained, the supreme court, on appeal, reserves the right to hold the defendant to an election to rest his case upon complainant's evidence and the court will in its discretion enter judgment final upon the evidence in the record in such case.

APPEAL from the chancery court of Warren county. HON. E. N. THOMAS, Chancellor.

Action by M. S. Carter against John N. Studdard and another. From a judgment dismissing the bill of complaint, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Dabney & Dabney,* for appellant.

*J. C. Bryson* and *J. E. Holmes,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

Appellant, Carter, and defendants Studdard and White on the 29th day of May, 1914, entered into the following contract:

"(1) This agreement, made and entered into by and between John R. Studdard, H. A. White, and William O. White, of Memphis, Tennessee, parties of the first part, or their assigns, and M. S. Carter, of Fulton, Tennessee, party of the second part.

"(2) The said parties of the first part are the owners of a certain tract of timber located in township 17, range 5 east, Warren county, Mississippi, being a total acreage of one thousand three hundred and seventy, bought from the Dabney estate and Walton (see records for description), witnesseth:

"(3) The said second party is the owner of a sawmill now located at Fulton, Tennessee, and hereby agrees to move said mill to Mississippi, locating same on the above-described tract of timber, at his own expense, making two sets, one on the east and one on the west side of tract, at his expense.

"(4) The said first parties hereby agree to deliver the logs on the yard skidway at their own expense, and the said second party agrees to saw into lumber the logs from 12" in diameter and up, manufacturing same into the best widths and standard thicknesses, as may be

directed by said first parties, and sawing the best grades of lumber possible out of each log, trimming the rough ends, and manufacturing the lumber with as little loss as possible, having in view at all times the saving of timber and the manufacturing of the highest grades of lumber.

"(5)  And for the cutting of said timber into lumber, the first parties agree to pay at the rate of five dollars per thousand feet for the oak, poplar, cottonwood, and lynn, and five dollars and fifty cents per thousand for the hickory, lumber measurements, but no lumber under No. 2 common is to be paid for only as hereinafter provided for.

"(6) Settlements for the cutting are to be made on an estimate of the amount of lumber cut and stacked at the end of every two weeks, less five (5) per cent., and the final settlement for the manufacturing of the lumber is to be based and made by the tally sheets from the sale of the lumber.

"(7)  After deducting the cost of manufacturing, selling, and loading on cars, collection for the lumber, and the adding to this cost stumpage value as follows: five dollars per thousand feet for the oak and poplar, and six dollars for the hickory lumber, for all grades except No. 2 common which shall be charged stumpage value at the rate of two dollars per thousand feet, the cottonwood and lynn at three dollars and fifty cents per thousand for all grades except No. 2 common, which shall be two dollars per thousand feet as stumpage value, which shall be retained by the said first parties—it is agreed by the said first parties that whatever amount, if any, may be received from the sale of the lumber, over and above all expenses, including stumpage value as above set out, that the said first parties are to retain two-thirds of the excess, and to pay to said second party the other one-third, such excess to be paid to him for his services rendered in the scaling of logs, loading cars, measuring of lum-

ber, looking after the interest of the first parties in a most profitable manner.

"(8) The said second party hereby agrees to render such services and to accept the one-third excess for his services rendered as above stated.

"(9) The said second party agrees to furnish sticks and foundation and to stack the lumber at a price not to exceed fifty cents per thousand feet, using plenty of sticks in stacking, widths not to be over 1½ inches, clear of bark edges, and to construct the foundation with the proper slant, using enough sills to prevent lumber from sagging in the stacks and no lumber to be stacked within two hundred feet of the mill shed.

'(10) The said second party further agrees to keep the lumber cleaned up from the yard and put into stacks promptly, in order that the lumber may not damage from the weather or being in the bulk on the yard.

"(11) The said second party agrees to make weekly reports by mail to said first parties, giving approximately the amount, kinds, and grades of lumber that he has manufactured at the end of the week; also scale on logs hauled by the logger.

"(12) The said second party is to scale logs and keep close watch over the cutting, hauling, and not to allow such timber to be cut and hauled that will not produce good lumber; also to look after the loading and measurements of lumber and to keep account of the lumber hauled from the mill to railroad, crediting each man with the amount he has hauled, furnished the name and amount hauled by each individual to the said first parties.

"(13) The said second party agrees to saw any lumber from any additional timber that the said first parties may purchase from time to time at the same prices and conditions as heretofore mentioned.

"(14) The said second party agrees not to negotiate for or to purchase from any one any timber, either standing or in logs, from parties during the

time he is employed by the said first parties to cut the timber from these one thousand three hundred and seventy acres, or any additional timber the said first parties may purchase on adjoining land. It is understood that, where timber is offered to the said second party by owners, he is first to submit such offers to the said first parties, and if purchase is made by the said second party it must be made by the direction of the said first party.

"(15) It is agreed and understood by the parties hereto that if for any reason the said first parties fail to keep enough logs on skidways or yard, and the said second party was compelled to close down his mill for any reasonable time, that in this event the said second party would not be entitled to any pay for the loss of time. It is further agreed, in case the lumber market should become dull and the said first parties could not dispose of their lumber without a loss, the said second party shall close down his mill without any expense to the said first parties until such conditions shall have improved, to enable the said first parties to sell their lumber without a loss.

"(16) The said second party is to sell for cash to the local trade such lumber as mill culls at the best price obtainable, reporting the amount and turning over all proceeds from such sale promply to said first parties.

"(17) The said first parties agree to pay to said second party ——— per cent. of the total amount collected from the sale of the mill culls; said amounts to be credited to the account of said second party and to be paid at the final settlement.

"(18) It is agreed to and understood between the parties to this contract that, in the event that said second party should die or become disabled before completing this contract, the said first party shall have the right to take charge and operate his mill outfit, paying to his estate one dollar per thousand feet rental

for all lumber cut on his mill, until they shall have finished cutting all the timber they own or have under contract to purchase.

"Witness our signature this 29th day of May, 1914. · .

        "JOHN R. STUDDARD,
        "N. A. WHITE,
        "WM. O. WHITE by H. A. WHITE.
        "M. S. CARTER."

Appellant, Carter, proceeded under this contract to move this mill from Tennessee to the community of Oak Ridge, Warren county, Miss., and set up the mill upon the land of appellees, and dug a pond to furnish water for the operation of the mill, and in the month of July following the making of this contract notified appellees that he was ready to begin sawing timber in accordance with the contract as soon as they would furnish logs as agreed. The defendants, however, failed to proceed to log the mill, seemingly on account of the breaking out of the war in Europe, which had affected the price of lumber, as well as the demand for lumber, to a considerable extent. Carter remained upon the land, ready at all times to begin the operation of the mill as soon as appellees would furnish the logs. The appellant was under the impression, from the representations of appellees, that the appellees could not carry out the contract without loss of money upon the operation, and remained under this impression during the year 1914. In the early part of the year 1915 lumber buyers began to write to Carter with reference to securing lumber, and then he discovered there was a demand for lumber; but the appellees failed to furnish the logs as agreed, or to cancel the contract, and did not give notice of any intention not to carry out the contracts, but were trying to sell their lumber holdings to other parties, with an arrangement with the buyers to ˙ assume their contract with Carter. Finally they did sell the timber holdings, without taking care of

their contract with Carter. Carter brought suit by attachment in the chancery court, setting out the amount of timber upon the land, cost of the operation, and the amount of his profits, had the contract been carried out. The defendants admitted the execution of the contract, but denied the right of Carter under the facts existing to recover anything of then for their failure to log the mill, so that he might operate in accordance with his contract, and setting up various and sundry amounts of money advanced by them to Carter, which it is claimed more than equaled any loss suffered by him. They denied that the mill could have been operated at a profit, and denied liability to Carter in all respects whatsoever. Carter testified to the execution of the contract, the understanding of the parties, to the moving of his mill from Tennessee to Mississippi, and his ability to carry out the contract, had the logs been furnished as agreed upon, tendered the testimony of experienced timber estimaters, who had estimated the timber growing upon the lands embraced in the contract, giving the amount of each kind of timber named in the contract, introduced experienced timber haulers to show the cost of logging the timber, lumber haulers to show the cost of hauling the lumber from the mill to the railroad, and loading same upon the cars, giving the cost as to each kind of timber; also introduced lumber buyers, and a party who had operated a mill and sold lumber in the same community, and the market reports of the various kinds of lumber, and the cost of manufacturing and the price on the market of the different kinds of lumber. At the conclusion of the complainant's evidence the defendants made a motion to strike out the evidence for the complainant, and for a judgment of nonsuit against the complainant, which motion the chancellor sustained, dismissing the bill of complaint, from which judgment, complainant appeals here.

The defendants objected to most of the evidence of complainant when it was being introduced, some of which was sustained by the chancellor, but most of which was reserved, as the chancellor stated, to save time, but was sustained at the conclusion of complainant's testimony, on the theory that the evidence introduced as to damages was speculative and insufficient to support a judgment for the complainant.

We have heretofore condemned the practice, which seems to be growing in the chancery courts of the state, to sustain a motion at the conclusion of the complainant's evidence to strike out the evidence and give judgment for the defendant, without having the evidence of the defendant before the chancellor, and without requiring a defendant to elect to rest his case upon complainant's evidence. This practice is wholly unknown under chancery practice and procedure, and should not be indulged in the chancery court, as it undoubtedly protracts litigation. If the entire evidence was in the record, we could frequently enter final judgment here for one or the other of the parties, and this ought to be done whenever it is practical, to the end that lawsuits should have an end.

We have carefully reviewed the evidence in this record, and reached the conclusion that the chancellor was wrong as to its being speculative. We think the evidence was competent, and was sufficient, if uncontradicted, to support a judgment in favor of the complainant, and that the chancellor, or this court either, could find the amount of damages from the evidence with reasonable certainty. We do not deal with the questions in detail, because on this record we feel it should be remanded, so that defendant may produce defensive evidence, if he has any. As stated before in a former opinion, we reserve the right to hold the defendant to an election to rest his case upon complainant's evidence, and that, whenever this prac-

tice is resorted to, this court will in its discretion enter judgment final here upon the evidence in the record in such cases.

*Reversed and remanded.*