STUDDARD ET AL. *v.* CARTER.

[82 South. 70, Division B. No. 20721.] ·

1. LOGS AND LOGGING. *Contract for sawing logs. Election to treat . contract as breached.*

Where a contract by which plaintiff was . to saw logs at a stated price for defendant provided, that in case the market should become dull, so that defendants could not dispose of their lumber without loss, plaintiff should close down his mill. In · such case plaintiff could elect to treat the contract as breached where defendants failed to supply logs for nearly a year after the lumber could have been sold at a profit, and the bringing of suit was such an election.

2. LOGS AND LOGGING. *Breach of contract. Damages. Amount.*

Under the evidence as set out in this case which was an action for breach of contract to furnish logs, which were to be sawed by plaintiff for defendants at a certain price per thousand feet, the court held that the jury was warranted in finding a larger verdict than forty-five hundred dollars.

3. DAMAGES. *Speculative damages.*

Evidence is not speculative which shows the cost of each item with reasonable certainty as the law only requires reasonable certainty and not mathematical certainty.

4. · DAMAGES. *Duty to mitigate. Who may invoke the rule.*

Where the contract obligated plaintiff, the owner of a saw-mill, not to buy timber from · others without defendant's consent · during the time he was employed to cut timber for them, and defendants breached the contract by failing' to furnish timber, they are not in a position to invoke the ·rule that the plaintiff should be charged with such sums as he could have earned by·

taking other contracts; where defendants did not notify plaintiff that they were willing for him to contract for timber with others.

5. APPEAL AND ERROR. *Verdict approved by chancellor. Conclusiveness.*

While the chancellor has the power to set aside a jury verdict in cases where a jury trial is not granted by statutes and decide it in accordance with his own conception of the truth of the facts in issue, he will ordinarily not do so, unless in his judgment the jury's finding is manifestly wrong and where a jury's verdict is approved by the chancellor, by rendering judgment thereon, the supreme court, on appeal, will not reverse for misdirection of the jury, unless it could say that the facts did not support the verdict, or unless the court was convinced from the whole record that the chancellor misconceived the law applicable to the case.

APPEAL from the chancery court of Warren county. HON. E. N. THOMAS, Chancellor.

Action by M. S. Carter against John R. Studdard and others. From a judgment for plaintiff, defendants appeal.

The facts are fully stated in the opinion of the court.

*J. C. Bryson* and *Holmes & Holmes,* for appellants.

*Dabney & Dabney,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

This is the second appeal in this case. The first case is reported in 118 Miss. 345, 79 So. 225, where the contract involved is set out in full.

The contract may be briefly summarized here by stating that appellee, Carter, and appellants, Studdard and White, entered into a contract reciting that Studdard and White were the owners of certain timber situated in Warren county, Mississippi, and that the appellee was the owner of a sawmill located at the time of the making of the contract in Fulton, Tenn., and

that appellee agreed to move his mill to Mississippi at
his own expense, making two sets upon the land upon
which the timber was growing. The appellants agreed
to deliver to the appellee logs on the yard skidway at
their expense, and the appellee agreed to saw into
lumber the logs from twelve inches in diameter and up,
manufacturing the same into the best widths and stand-
ard thicknesses as directed by appellants. For the
cutting of the timber and lumber the appellants agreed
to pay appellee at the rate of five dollars per thousand
feet for oak, poplar, cottonwood, and lynn, and five
dollars and fifty cents per thousand feet for hickory,
but 'no lumber under No. 2 common to be paid for
except as thereinafter provided. Settlements were to
be made for the cutting on an estimate of the amount of
lumber cut and stacked at the end of every two weeks,
less five per cent., and the final settlement for the
manufacture of the lumber to be based on, and made
from, the sale of the lumber, after deducting the cost
of manufacture, selling, and loading on cars, collection
for the lumber, and adding to this cost stumpage value
at five dollars per thousand feet for the oak and poplar
and six dollars for the hickory lumber, for all grades
except No. 2 common, which should be charged for,
stumpage value, at the rate of two dollars per thou-
sand feet; the cottonwood and lynn at three dollars
and fifty cents per thousand for all grades except
No. 2 common, which should be charged for at the
rate of two dollars per thousand feet, stumpage value,
which charges were to be retained by the said ap-
pellants; and from the amounts received from the sale
of the lumber, over and above all expenses, the ap-
pellants were to have two-thirds and the appellee •one-
third; said one-third to be for services rendered by
appellee in the scaling of logs, loading cars, measuring
lumber, and looking after the interest of the appellants
in the most profitable manner. The appellee was to

furnish sticks and foundations and to stack the lumber
at a price not to exceed fifty cents per thousand; and
to keep the lumber cleaned up from the yard and put
into stacks promptly, so it would not be damaged from
the weather or being in bulk in the yard; and to make
weekly reports by mail giving approximately the amount,
kinds, and grades of lumber; and to look after the
scaling, cutting, and loading and measurements of lum-
ber, and to keep account of the amount each man
hauled. The appellee further agreed to saw any lum-
ber from any additional timber the appellants might
purchase from time to time at the same prices and
conditions as on the tract here involved. Clause 14 of
the contract then provided:

"The said second party (appellee) agrees not to
negotiate for or to purchase from any one any timber,
either standing or in logs, from parties during the time
he is employed by the said first parties (appellants) to
cut the timber from these one thousand, three hundred
and seventy acres, or any additional timber the said
first parties may purchase on adjoining land. It is
understood that, where the timber is offered to the
said second party by owners, he is first to submit such
offers to the said first parties, and if purchase is made
by the said second party it must be made by the direc-
tion of the said first party."

It was further agreed that if for any reason the first
parties shall fail to keep enough logs on skidways or
yard, and the second party was compelled to close
down his mill for any reasonable time, in that event
the second party will not be entitled to pay for the
loss of time; and it was further agreed that in case
the lumber market "should become dull and the said
first parties could not dispose of their lumber without
loss, the said second party shall close down his mill
without any expense to the said first parties until such

conditions shall have improved, to enable the said first parties to sell their lumber without a loss."

'The second party, further, was to sell to the local trade for cash such lumber as mill culls at the best prices obtainable. It was further agreed that in the event the said second party should die or become disabled before completing this contract, the said first party should have the right to take charge of and operate the mill outfit, paying to the estate of the said second party one dollar per thousand feet rental for all lumber cut on his mill.

The contract was signed on the 29th day of May, 1914, and the appellee proceeded to move his mill from Tennessee to Mississippi, obtaining some advances from appellants for this purpose, and set up the mill upon the land in question, dug a pond to furnish water for the operation of the mill, and reported in July, 1914, that he was ready to begin operations. The appellants did not proceed to log the mill, and in August of that year the great war in Europe began, and the lumber market became disorganized, and remained so, at least until the latter part of the fall of that year.

Carter was situated upon said lands about twenty miles out from Vicksburg, Miss., and there was considerable correspondence between the parties and some advances made by appellants to Carter during this period of time. In the spring of 1915 Carter found that some lumber was being sold, and notified them he was ready to cut the lumber according to the contract. The appellants had been writing Carter that the market was in such condition that he could not operate, and he seems to have accepted their statement of the condition. It appears, however, from the proof that from the latter part of 1914 lumber could have been sold at some profit. Carter remained upon the premises until December 15, 1915, at which time he sued out this

attachment in the chancery court for his losses result-
ing from breach of the contract by appellants. The
appellants had made negotiations for the sale of their
timber to other parties, and had promised Carter in the
event they did sell that his contract would be taken
care of. Carter introduced proof by competent timber
estimators of the amount of timber of the various kinds
named growing upon the land, and evidence from ex-
perienced loggers what it would cost, situated as it was,
to log the mill; evidence by experienced lumber haulers
of the cost of hauling lumber to the railroad and loading
it on the cars; evidence of the cost of operating his
mill, and the capacity of his mill to saw the different
kinds of lumber; competent evidence of experienced
men as to the amount of lumber of the various kinds
called for in the contract which said timber would pro-
duce; and evidence of the market value of such lumber
in different markets during the different months em-
braced in the period between the dates he was ready
to begin operations and the date of the bringing of
the suit, showing that said lumber could be sold at a
profit, and the amount of profit at which could be
sold the various kinds of lumber involved, and at the
various periods involved.

On the first trial the chancellor held the evidence
insufficient, and on motion of the defendants struck
out the evidence, and decreed for the appellants, who
were defendants in the court below. This court revers-
ed the chancellor, and remanded the cause for a new
trial. When the case came on for trial, on motion of
complainant, a jury was impaneled, and the case was
submitted to the jury on the evidence and instructions,
and the jury returned a verdict for the complainant
for four thousand, five hundred dollars from which
judgment the present appeal is prosecuted.

Various instructions given to the jury are as-
signed for error, and it is argued here that it was

particularly error not to instruct the jury as to the time the contract was breached, and to measure the cost of operations, and prices, and damages as of the date of the breach. It is also urged that the evidence is not sufficiently certain and definite to sustain a verdict for the complainant, and especially for the amount found by the jury. The evidence shows that from about November, 1914, on to the date the suit was filed the price of lumber was advancing, and that it would take about eight months for the timber to have been sawed if it had been furnished according to the contract. The appellants' brief admits that, under some of the evidence before the jury, the jury could have found for more than the verdict rendered, but insists that it could not be sustained if the breach was treated as being made at certain dates. The correspondence between the parties shows that the contract had not been definitely abandoned by the appellants, or at least they had not disclosed to the appellee their intention to abandon the contract at any date earlier than the beginning of the suit. We think the appellee had a right to elect to treat the contract as being breached, and that the bringing of the suit was such election.

Taking the evidence in the record as to prices and cost as of this date, the jury would have been warranted in finding a larger verdict than it did find, and the appellants cannot complain of any error in not submitting to the jury the question as to when the contract was breached. The evidence is not speculative, because the evidence shows the cost of each item with reasonable certainty, and the law only requires reasonable certainty and not mathematical certainty. The rule was stated in *Beach* v. *Johnson,* 102 Miss. 419, 59 So. 800, Ann. Cas. 1914D, 33, as follows:

"If complete performance of a contract is prevented by either party, the other, who is willing and able to perform, must be compensated in damages to the

extent of making him whole. *Robertson* v. *Cloud,* 47 Miss. 208.

"The rule that damages which are uncertain or contingent cannot be recovered does not apply to an uncertainty as to the value of the benefit or gain to be derived from performance, but to an uncertainty or contingency as to whether any such gain or benefit would be derived at all."

In the present case the damages logically arise from the breach of the contract. The extent and amount of the damage is shown with reasonable certainty, and in no sense can it be said that the damages are speculative or uncertain within the meaning of the law upon that subject.

Again, it is insisted by the appellants that the appellee should have been charged with such sums as he could, with reasonable diligence, have earned by taking other contracts, and that he should not only be charged with such sums as he did earn, but with such as he might have earned. It will be seen from section 14 of the contract, set out above, that the appellants obligated the appellee not to buy timber either standing or in logs from parties during the time he was employed by the first party to cut for them, and that, if the timber was offered to the appellee, he must first submit such offer to the appellants, and that, if such purchases were made, they were to be made by the direction of the appellants. This clause has a material bearing upon this contention, and it was the duty of the appellants, if they were willing for the appellee to make such contracts, to give him notice to that effect, and, in the absence of their doing so, they are not in position to invoke this rule. Besides this, however, the proof before the court showed that appellee could not have obtained such contracts without putting himself in a position to breach his contract with the appellants.

It seems to us that inasmuch as the appellee was idle for about fifteen months, and inasmuch as he could have sawed timber within eight' or nine months, and inasmuch as he was charged with what he really earned during this period, and said amounts. deducted from his losses recoverable against the appellants, that they got all that they could ask for under the facts of this record.

In regard to the errors, earnestly argued, in the instructions to the jury, we think the appellants cannot complain of these instructions, because there is no statute giving the parties the right to a jury trial in this class of cases in the chancery court, and it was discretionary with the chancellor whether he would submit the issues to a jury or decide them himself. *Pittman* v. *Lamb,* 53 Miss. 594. In this case Justice CAMPBELL, speaking for the court, said:

"The two grounds of error assigned, as to the action of the court on the trial by the jury, and in refusing to grant a new trial, are disposed of adversely to the appellant by a consideration of the fact that in such a case as this it is entirely discretionary with the chancellor to refer an issue to a jury, or to try it himself; and that after he has made an order of reference he may revoke it before it is tried; or disregard the finding of the jury when made. Being discretionary, his action in reference to the issue before the jury cannot be pronounced erroneous. *Cook* v. *Bay,* 4 How. (Miss.) 485; *Dunn* v. *Dunn,* 11 Mich. 285; 2 Dan. Ch. Pl. & Prac. (3d Am. Ed.) 1115. The only question to be considered is, whether upon the whole record the final decree denying relief and dismissing the bill is correct."

Under this authority we must hold that when the chancellor approves the finding of the jury as to the facts, and when, from consideration of the whole record we are unable to say that the judgment is wrong, it

cannot be reversed. While the chancellor has the power to set aside a jury verdict in cases where jury trial is not granted by statute, and decide it in accordance with his own conception of the truth of the facts in issue, he will ordinarily not do so unless in his judgment the jury's finding is manifestly wrong; and, where a jury's verdict is approved by the chancellor by rendering judgment thereon, this court will not reverse for misdirection of the jury unless we could say that the facts did not support the verdict, or unless we were convinced from the whole record that the chancellor misconceives the law applicable to the case.

The judgment will therefore be affirmed.

*Affirmed.*