J. H. LEAVENWORTH & SON, INC., *v.* HUNTER.[*]

(Division B. April 2, 1928. Suggestion of Error Overruled May 7, 1928.)

[116 So. 593. No. 26,802.]

*Corpus Juris-Cyc. References: Abatement and Revival, 1CJ, p. 181, n. 76; p. 187, n. 27; p. 196, n. 87; p. 209, n. 11; Actions, 1CJ, p. 932, n. 44, 45; Adverse Possession, 2CJ, p. 290, n. 98; Assignments, 5CJ, p. 885, n. 56; p. 888, n. 71; p. 889, n. 75; p. 891, n. 85; Evidence, 22CJ, p. 656, n. 97; p. 866, n. 87; Taxation, 37Cyc, p. 1064, n. 76; p. 1065, n. 83; p. 1479, n. 88; Trespass, 38Cyc, p. 1015, n. 49; p. 1082, n. 28; p. 1166, n. 70; Witnesses, 40Cyc, p. 2466, n. 76; On the question of admissibility of shop books as evidence, see 10 R. C. L. 1171

et seq.; 2 R. C. L. Supp. 1163; 5 R. C. L. Supp. 590; 7 R. C. L. Supp. 346; As to measure of damages in action for trespass for wrongfully cutting trees on land of another, see 26 R. C. L. 941. On the rule as to abatement of cause of action affecting property rights, see 1 R. C. L. 47; 5 R. C. L. Supp. 2.

*Maynard, Fitzgerald & Venable,* for appellant.

254

`Ed. Brewer, Wassell Randolph` and `A. M. Coates,` for appellee.

Argued orally by *Geo. F. Maynard, Sr.,* and *Jr.,* for appellant, and *Ed. Brewer,* for appellee.

ETHRIDGE, P. J.   Appellant was complainant in the court below, and filed an attachment in the chancery court for actual and statutory damages for the willful trespass of appellee in cutting and removing from lands of appellant certain cottonwood and willow trees sold by appellee to the United States government for revetment work on the Mississippi river.   The lands from which this timber was cut is situated in the northwest quarter of section 27, township 27, range 6, which was purchased by the appellant from the O. H. Johnston Hunting Club.   This cutting was done between the 1st of September and the 8th day of October, 1924.   During the month of August, 1924, appellant entered into a contract for the purchase of this land, and other lands, from the O. H. Johnston Hunting Club, evidencing same by a written instrument, and, on the 1st day of November, 1924, a deed was executed by the O. H. Johnston Hunt-

ing Club to appellant conveying said lands together with all rights existing in the grantor, the particular clause of which will be hereafter discussed. As a part of its suit, complainant has deraigned its title to said land, and, among other titles, is a deed from Robert J. Walker to John A. Quitman, and a tax deed made by the tax collector of Coahoma county in 1897, for the taxes of 1896, conveying a large body of land to various individuals, who afterwards formed the O. H. Johnston Hunting Club, incorporating same and conveying the land to such company.

It appears from the record that there was some correspondence during August, 1924, between Walter Hunter, a son of the appellant, acting, or purporting to act, on behalf of his father, and R. V. Kimble, one of the officers of the appellant company, for the purpose of obtaining a right to cut timber a distance of two miles along the river, beginning below the mouth of Old river, and going up the river, and, in this correspondence and negotiations a suit pending in Washington county was, or appears to have been, settled. The contract when presented to appellee, was not signed by him, he having been advised by an attorney that the land in question lying along the river, as above stated, was located in the state of Arkansas, and not in the state of Mississippi; and, thereupon, the appellee purchased the land from a levee district of the state of Arkansas, and claims to have cut timber under the belief that the timber was upon such land, but, after the timber was cut, a survey disclosed that the land was not in Arkansas, but in Mississippi.

In the correspondence above referred to was a letter dated August 27, 1924, containing the following:

"Confirming our telegram of the 12th, it will be satisfactory for you to cut the willows along the bank above Sunflower Landing, and starting at the mouth of Old river, and working up the bank a distance of approxi-

mately two miles, and back a depth of one hundred yards. As explained, we prefer not to sell, but in view of the urgency of your need, it will be satisfactory, provided you follow instruction. Do not cut any cottonwood and pay us twenty-five cents per cord on government measure.''

It was claimed that the cutting of this timber was contingent upon the signing of a contract by C. W. Hunter in regard to the settlement of a lawsuit in Washington county, and that appellant sent a contract to be signed by appellee, addressed to him at Memphis, Tenn., the contract being dated August 27, but Hunter declined to sign same. It appears that Walter Hunter gave directions to the force that cut the timber and told them about the contract, and that he testified with reference to the expense involved in the cutting. It appears that the timber cut ranged in size from three to eight inches in diameter at the base of the tree, and that practically the whole tree was utilized in revetment work.

The appellant offered the testimony of one Wilcox, who testified that he saw the cutting of the timber, and that some time after it was cut he counted the stumps and located where the government barge was landed.

It appears from the testimony that Wilcox took two helpers to count the stumps of the trees cut, and divided the strip of land into divisions of convenient sizes, and each of the three parties counted the stumps on one of the divisions, beginning at one, two, three, and so alternating until the whole strip was counted, and that the two helpers reported the number cut to Wilcox, and he made a memorandum of the number thereof, but did not personally count all the stumps involved, and that the other witnesses, the two helpers, were not present to testify, one being out of the jurisdiction of the court, and the other being dead. The complainant offered this testimony of Wilcox on the theory that the cutting was done under his supervision, and that he made a memo-

randum thereof at the time and introduced same at the trial, undertaking to testify from same as to the total number of trees cut. The court permitted him to testify as to the number he personally counted, but excluded evidence as to the other two helpers, and refused to permit Wilcox's memorandum to be introduced. The complainant also introduced witnesses who testified that they were skilled and experienced in the estimate of timber on lands, as a result of their business connections, and that they estimated the number of trees on this tract without actually counting same, and offered to give their opinion as to the number of trees, based upon their experience in estimating the average distance of trees apart, giving their estimate of same based on the number of trees per acre. The premises had been surveyed, and the acreage determined. The court refused to admit this evidence.

It will be noted that the plaintiff was undertaking to prove the number of trees cut and removed as a part of this case, by making out the value of the timber.

We think the testimony of Wilcox as to the number of trees cut and reported to him, and his memorandum thereof made at the time in a book kept by him, showing the number of trees counted by each party, was competent under the principle permitting "shop books" in evidence. *Panola County Bank* v. *Lumber Co.,* 117 Miss. 593, 78 So. 517; *Atchison, T. & S. F. R. R. Co.* v. *Williams,* 38 Tex. Civ. App. 405, 86 S. W. 38; *Sheridan Coal Co.* v. *Hull,* 87 Neb. 117, 127 N. W. 218, 138 Am. St. Rep. 435, and note, 453; Wigmore on Evidence, vol. 2, p. 1530, and notes.

We also think it was competent for McGovern and the others, experienced in such matters, to testify and give their opinion and knowledge of such matters, based upon their experience, as to the approximate number of trees upon the land or cut from the land, but we do not decide whether this would be competent to prove

the number of trees in a suit for the statutory penalty, because, in our opinion, the chancellor was correct in refusing to allow recovery of the statutory penalty under the facts in this record.

In suits of this kind, in questions establishing value, a more liberal rule prevails than applies to ordinary suits. Value may be proved in this method, and it is competent for an experienced estimator to give his opinion, based upon observation and experience, in such matters, as to the number of trees, and, consequently, the court erred in excluding this evidence. It might be that the estimate of the several witnesses differs from the actual count made by Wilcox and his associates, but the jury and the court are entitled to have the aid of such testimony in arriving at a correct conclusion in such matters. *Carter* v. *Studdard,* 118 Miss. 345, 79 So. 225.

As stated above, the chancellor refused to allow the recovery of the statutory penalty on the theory that Hunter cut the trees in good faith, believing that they were on the land which he had purchased, and which was supposed to be in the state of Arkansas. Hunter did not sign the contract with complainant referred to above in the correspondence, and although his son may have acted under the belief that the contract existed, yet, if Hunter was acting in good faith and believed that the trees being cut were on his land purchased from the state of Arkansas, he would not be liable for the statutory penalty, although he would be liable for the actual value, where, as here, the land is not the land he is supposed to have owned, but belonged to another; consequently, the chancellor's decree in this regard will be upheld and affirmed.

On the trial of the cause, the appellant offered to prove by one Wildberger that he went into possession of the land in controversy under a contract entered into in August, and that he was in possession under color of title at the time the timber was cut.

The court refused to permit this proof, and refused to permit the pleadings to be amended so as to set up that contract as the basis of color of title and actual possession.

In our opinion, it was not necessary, in the bill, to deraign the title in this kind of case, but it was only necessary to prove the title, or color of title, with actual possession; and, consequently, that proof of possession under color of title was competent evidence in this suit, and the amendment should have been permitted.

In the deed from the O. H. Johnston Hunting Club to J. H. Leavenworth & Son, Inc., which conveyed the lands involved in this suit, in the granting clause of the deed is the following:

"Party of the first part doth by these presents, unto the party of the second part, its successors, and assigns, grant, bargain, sell, convey, and warrant generally the following described lands, lying, being and situate, etc. [describing the property], . . . but the party of the first part does not warrant that the lands in section 8 and a portion of the lands in section 27 are not in the Mississippi river, but intends to convey and does convey especially all accretions and riparian rights to the lands in said last two-named sections with all of its rights of action accrued or to accrue, for any and all depredations and trespasses committed upon any and all of the lands in this conveyance described."

This deed is dated November 1, 1924, which is subsequent to the cutting of the timber by the appellee.

It is contended that this right could not be assigned, and was not assignable, because the action would die with the defendants, and, at common law, was not assignable; and considerable argument is made with reference to this point, which seems to have been the chief point in the case, and, apparently, was very influential in a decision of the case.

We are of the opinion that the right of action was assignable. Section 1834, Hemingway's 1927 Code (section 2091, Code of 1906), provides that:

"Executors, administrators, and temporary administrators may commence and prosecute any personal action whatever, at law or in equity, which the testator or intestate might have commenced and prosecuted. And they shall also be liable to be sued in any court in any personal action which might have been maintained against the deceased."

Section 1835, Hemingway's 1927 Code (section 2092, Code of 1906), reads as follows:

"When any decedent shall in his lifetime have committed any trespass, the person injured, or his executor or administrator, shall have the same action against the executor or administrator of the decedent as he might have had or maintained against the testator or intestate and shall have like remedy as in other actions against executors and administrators; but vindictive damages shall not be allowed, and such action shall be commenced within one year after publication of notice to creditors to probate and register their claims."

These statutes were construed by this court in the case of *McNeely* v. *City of Natchez* (Miss.), 114 So. 484, and, in the course of the opinion, at the bottom of page 486, the court discussed the question and construed these statutes, saying:

"The decision of this question turns upon the definition of the words 'personal action' used in the above-quoted section. At common law, a personal action, in the absence of special statute, did not survive against the deceased. And sections 1834 and 1836, *supra,* are in derogation of the common law, and must be strictly construed. It will be presumed that the legislature used the technical words 'personal action,' ascribing to them their strictly technical meaning. There were many kinds of actions, such as action at law, action *ex contractu,* action

*ex delicto,* action *in personam,* action *in rem, quasi in rem,* amicable, civil, common law, equitable, hypothecary, local, mixed, penal, personal, petitory, popular, possessory, *qui tam,* real, remedial statutory and transitory. 1 C. J., pp. 929 to 933. A penal action is defined as 'an action upon a penal statute; an action for the recovery of a penalty given by statute.' 1 C. J. 932, section 14, and note. The same authority, section 15, defines a personal action as 'an action brought for the recovery of personal property, for the enforcement of some contract or to recover damages for its breach, or for the recovery of damages for the commission of an injury to the person or property.' See *Hayden* v. *Vreeland,* 37 N. J. Law, 372, 18 Am. Rep. 723.''

At the bottom of page 487, we conclude this opinion as follows:

''We conclude that the term 'personal action' in its broadest sense includes all actions except those relating to or for real estate, but in this statute is used in the restricted sense as defined in Corpus Juris and authorities there cited, heretofore set out.''

It would appear that any action which is brought for recovery of damages for the commission of an injury to person or property is a personal action which survives under the above statute, and, of course, would be assignable.

Our law also recognizes the assignability of actions in section 511, Hemingway's 1927 Code (chapter 134, Laws of 1916); section 512, Hemingway's 1927 Code (section 718, Code of 1906). See, also, 1 R. C. L. title "Abatement and Revival," p. 47, sections 146, 147 and 148.

We are, therefore, of the opinion that the right of action was assignable, and, as the deed specifically made an assignment of the cause of action, the right of the appellant to sue thereon exists by virtue of said deed, although the timber was cut prior to the execution of the deed.

The defendant, appellee, introduced in evidence a sheriff's deed made by P. Poindexter, sheriff, on October 6, 1845, reciting that on the 23d day of June, 1845, a certain writ was issued from the circuit court of Adams county on a certain judgment against Robert J. Walker, E. Garnett Howell, and Peter M. Lapice, and that a sale to the state of Mississippi was made thereunder, the deed containing the lands involved in this controversy and other lands, and contended that complainant's chain of title was through the deed from Robert J. Walker and wife made subsequent to this sheriff's deed, by which the land in controversy was conveyed.

The defendant also introduced a deed from the state of Mississippi to the O. H. Johnston Hunting Club, dated the 5th day of November, 1924, which deed, for the consideration of ten dollars cash, undertook to quitclaim and convey to the O. H. Johnston Hunting Club all the state's right, title, and interest in and to the lands involved in this suit, which were acquired under an execution sale. This deed was signed by the Governor and the land commissioner, and approved by the attorney-general, Rush H. Knox, in the following words: "Approved for reason that I don't believe the state has any title."

The complainant offered to prove that, prior to this, on inquiry of the land commissioner, the state owned no such lands, and there was no record showing same. The deed does not show, on its face, that any such record existed showing the land to belong to the state, and the certificate of the attorney-general that, in his opinion, the state had no title to the land is very pertinent, because, for many years, there has been a statute, section 2946, Code of 1906 (section 6116, Hemingway's 1927 Code), by which it is provided that:

"If in his opinion the state has no title to said land, he shall so notify the auditor or land commissioner, who shall strike such land from the record in his office and

notify the clerk of the board of supervisors of the county in which such land is situated with certified lists of lands so stricken off," etc.

This court held in the case of *Caruth* v. *Gillespie*, 109 Miss. 679, 68 So. 927, that where parties are in possession of land, and have been for a long time, making improvements on it, and dealing with it as their property, hostile to the state's claim, and where more than thirty years have elapsed between the taking of possession and the institution of the suit by the state, the law will presume a grant by the state of its title. We think the presumption is applicable to the facts of this case. In other words, there is nothing except the sheriff's execution deed to show that the state has ever claimed title. That deed was executed in 1845, and we find the land assessed to private owners in 1896, and was conveyed by the original owners subject to the execution sale, and was sold for taxes to the parties who organized the O. H. Johnston Hunting Club in 1897, and was purchased by said individuals, and has since been occupied and used by them, which is a sufficient indication that there had been a grant of same by the state.

It will be noted that the attorney-general, whose duty it is to pass judgment upon the legal title, under the statute above referred to, was of the opinion that the state had no title thereto. That opinion, we must presume, was based upon a careful examination of the records of the land office and any other sources which any other records furnished.

We are, therefore, of the opinion that the state had no title to the land, and, consequently, no right of action for the trespass committed upon it.

The tax sale in 1897 for the taxes of 1896 was challenged as being void for the reason that no notice was published notifying property owners of the filing of the assessment roll for the year 1896, and that, consequently, the assessment was void, and the sale thereunder conveyed no title.

By section 3782, Code of 1892, it was provided:

"The assessor shall complete the assessment and deliver the roll or rolls to the clerk of the board of supervisors on or before the first Monday of July in each year. He shall make an affidavit, and append it to each roll, showing that he hath faithfully endeavored to ascertain and assess all the persons and property in his county, and that he has not omitted any person or thing, or placed upon or accepted an undervaluation of any property, through fear, favor, or partiality; and, in case of a personal roll, the affidavit must further show that he hath administered the oath required in every case where it was in his power to do so, and called attention to its provisions."

Section 3783, Code of 1892, reads as follows: "The failure of the assessor to certify and swear to his assessment roll, or to return it on the day named for its return, shall not affect the validity of the assessment if approved by the board of supervisors, or by operation of law."

Section 3791, Code of 1892, reads as follows: "The return and filing of the assessment rolls in the office of the clerk of the board of supervisors by the assessor shall be notice to all persons of the fact, and of the contents of the roll or rolls so filed; and all persons shall be held to have notice of the time within which to file objections to assessments and of the time when the board of supervisors will hear the same; and of its power to raise assessments thereat."

It will thus be seen that no notice was required to be published under the Code of 1892, but that the filing of the roll in the office of the clerk, at the time fixed by law, charged all persons with notice thereof. It was clearly within the power of the lawmakers to so provide, and the roll therefore was not invalid; and, under section 2735, Code of 1892, it is provided that:

"Actual occupation for three years, after two years from the day of sale of land held under a conveyance by

a tax collector in pursuance of a sale for taxes, shall bar any suit to recover such land or assail such title because of any defect in the sale of the land for taxes, or in any precedent step to the sale, saving to minors and persons of unsound mind the right to bring suit within such time, after the removal of their disabilities, and upon the same terms as is provided for the redemption of land by such persons.''

It is also insisted by appellant that said appellant was entitled to recover the full value of the timber loaded on the barge, which the proof showed to be two dollars and seventy-five cents a cord, on the theory that appellee was a willful trespasser.

The court allowed only the value of the timber on the barge, less the expense of cutting and loading it thereon.

The ruling contended for is applicable to a willful trespasser, but, on the record before us, we think the chancellor was warranted, from the evidence, in believing that the appellee was not a willful trespasser, but was acting *bona fide,* relying on his purchase from the state of Arkansas.

We are, therefore, of the opinion, that the chancellor applied the correct rule herein, as he allowed damages against appellee, and, as applied to this case, the rule should be the value of the timber loaded on the barge, less the cost of cutting and loading thereon.

The judgment of the court below is affirmed as to the refusal to allow the statutory penalty, but is reversed and remanded, as to that part of the bill claiming actual damages, for a new trial in accordance with the views expressed in this opinion.

*Reversed in part, and affirmed in part.*