## Hutchison v. Ash et al.

*Bidelspacher & Bidelspacher*, for plaintiff.

*Candor, Youngman & Gibson* and *Harry Alvan Baird*, for defendants.

WILLIAMS, J., February 10, 1949.—Preliminary objections have been filed to the statement of claim of plaintiff.

The suit is for treble damages for alleged cutting of beech, birch and maple timber upon tracts of land in McIntyre Township.

The statement of claim alleges as follows:

1. That plaintiff is owner of the mineral rights in the land in question, warrant no. 5651, under the name of Miller and Murray.

2. That plaintiff secured these rights from the Commissioners of Lycoming County by deed dated December 20, 1945.

3. That along with the mineral rights plaintiff received all the privileges and appurtenances thereunto belonging, or in anywise appertaining, including among other things all beech, birch and maple timber.

4. That the mineral rights are valuable.

5. That defendants, on or about December 15, 1943, to May 15, 1947, cut down 9,525 beech, birch and maple trees.

6. That the treble damages asked are based on the Act of June 24, 1939, P. L. 872, 32 PS §581; 18 PS §4935.

Plaintiff alleges further that Ellen Thompson and others conveyed land to Thomas Proctor by deed dated

November 5, 1891, under which Proctor defendants claim; but that mineral rights were reserved in the Thompsons, under whom plaintiffs claim.

It is not only alleged in the statement of claim that mineral rights were reserved, but it is also alleged that there was reserved the right to fell such timber as necessary for the convenient carrying on of the business of mining.

The aforementioned Thompson-Proctor deed recites as follows:

"For the purpose of mining upon and under the following tracts of land situate in Lycoming County, Pennsylvania, No. 4780, 4784 and 4789, all warranted in the warranty name of Miller and Murray, and Nos. 5650 to 5654, 5660, 5661, 5752, and 5762, in the warranty names of James Strawbridge, the said parties of the first part save, except and reserve out of this grant to themselves, their heirs, executors, administrators and assigns, for the purposes aforesaid and not otherwise, all beech, birch and maple timber of twenty (20) inches or less in diameter at the date hereof, measured at the place where the butt of the first log ordinarily would come, and also the right to enter upon said land for the purpose of cutting and removing said timber for the purposes aforesaid.

". . . saving, excepting and reserving out of this land unto the parties of the first part, their heirs and assigns, all coal, ore, oil, natural gas, salt water, minerals, quarrying stone and marble, on, in and under the said land, with free ingress and regress to and from and a right of way over the same at all times for said parties of the first part, their heirs and assigns, agents, tenants and employees to any part of the same, for the purpose of searching, boring for, mining, quarrying and removing said coal, ore, oil, natural gas, salt water, minerals, quarrying stone and marble, and the right to fell such timber and erect, construct, make, sink,

drive, maintain, operate and use on such lands and such buildings, structures, track, planes, railroads, wells, pits, shafts, air and water courses, engines, machinery, pipes, works and improvements in, upon, under and over said lands as may be necessary for the convenient carrying on of the business of mining, boring, searching for and removing the said coal, ore, oil, natural gas, salt water, minerals, quarrying stone and marble, and the right to use such part or parts of the surface of said land as may be necessary or convenient for the storage and dumping of the coal, ore, oil, natural gas, salt water, minerals, quarrying stone and marble, and waste material resulting from any of the said operations, and generally to do all other acts and things necessary or proper for the working and getting out of said coal, ore, oil, natural gas, salt water, quarrying stone and marble, according to the most approved practice for mining similar materials, but in such manner as not to unnecessarily damage the lands hereby conveyed, the foregoing stipulation being in enlargement and not in restriction of the incidental rights legally appertaining to the ownership of said excepted mines, coal, oil, ore, natural gas, salt water, minerals, quarrying stone and marble. But said party of the second part, his heirs or assigns, may use any of the stone found on the premises hereby conveyed to any purpose upon said premises, but if any timber other than that hereinafter reserved to said parties of the first part, their heirs, executors, administrators or assigns, is used or destroyed by the said parties of the first part, their heirs or assigns, acting under the provisions of this covenant of reservation, the value thereof of standing timber shall be paid to the said party of the second part, heirs or assigns, by the person or persons so destroying the same, and if any exploring, mining, boring or quarrying, provided for in the above

covenant of reservation, or any proceedings thereunder, shall in any manner injure or destroy any buildings that may have been erected by said party of the second part, his heirs or assigns, the amount of such damage shall be paid to the said party of the second part, his heirs or assigns, by the person or persons so injuring the same."

According to the pleading the mineral rights, with any other rights that grantors in the Thompson deed had, were separately assessed as belonging to such grantors until June 8, 1942, when the Treasurer of Lycoming County sold the rights to the Commissioners of Lycoming County; that on December 20, 1945, the mineral rights were sold to plaintiff by the Lycoming County Commissioners; and that on December 1, 1947, the Lycoming Commissioners transferred over unto plaintiff all of the interest of Lycoming County in any action, claims, or interests that the county "may now have or may ever have had, growing out of the owner-ship by the County of Lycoming".

The assignment of December 1, 1947, also purports to convey all beech, birch and maple timber on, over and under the land in question.

The pleadings allege further that defendants continuously from December 15, 1943, to May 15, 1947, without leave of plaintiff, cut down and felled 9,525 beech, birch and maple trees.

It is to be noted that defendant, Charles S. Ash, owned the surface rights of the land in question, and conveyed these rights on December 15, 1943, to defendants, Harry J. Krimm and Lawrence E. Krimm, a partnership, known as Krimm Brothers Company.

Preliminary objections to the complaint were filed by both Ash and Krimm Brothers Company. The preliminary objections are the same.

The objections are as follows:

1. That no timber rights passed by reason of the treasurer's sale of the alleged Thompson mineral reservation, and that no timber rights passed by reason of the deed of the Lycoming County Commissioners to plaintiffs.

2. That there was insufficient averment that plaintiffs acquired any rights under the assignment pleaded in paragraph 10 of the complaint, and that therefore the complaint is insufficient as to any damages arising out of the cutting of beech, birch and maple timber between June 8, 1942, and December 20, 1945.

3. That the complaint fails to aver any present cause of action.

4. That the claim in paragraph 12 which asks for damages because of the loss of trees and the lessening of value of the property is untenable in view of the claim for the value of the beech, birch and maple trees cut, in that plaintiff's remedy is in the alternative and not the cumulative.

5. That the claim for treble damages for timber is invalid on its face.

6. That there is no allegation as to the size of the beech, birch and maple trees, and that therefore there could be no classification as "timber" within the meaning of the alleged reservation in the Thompson deed.

7. That paragraph 4 of plaintiff's complaint, which alleges that defendant, Krimm Brothers Company has not complied with the Fictitious Names Act, is surplusage.

8. That the affidavit to the complaint is defective in failing to comply with Pa. R. C. P. 1024(a) and (b), which provide that the affidavit must aver that the facts now appearing of record are true upon the affiant's personal knowledge, information and belief, and for a certain type of affidavit with respect to inconsistent averments.

9. That no copy of the assignment of the interest of Lycoming County pleaded in paragraph 10 is attached as required by Procedural Rule 1019(h).

10. That there is no averment as to the amount of consideration paid by plaintiff to the Lycoming County Commissioners for the assignment pleaded in paragraph 10 of the complaint.

One preliminary objection of defendants attacks the Thompson deed reservation. Defendants contend that grantors attempted to reserve timber rights for the benefit of the mineral reservation, but that the appurtenance clause on the end of the deed conveys all of the rights as to timber because it reads "together with all and singular the woods, ways, rights," etc. In other words, defendants claim plaintiff has no rights in any timber because even though the deed from Thompson to Proctor went to great length in describing a reservation of minerals and timber for mining these minerals, the appurtenance clause in the same deed conveys all the woods to the predecessor in title of defendants.

We cannot agree with this contention. In case of a clear repugnancy between two clauses of a conveyance it has sometimes been said that the earlier clause should prevail over the latter. This rule has been applied to prevent, by a later clause, the revocation by implication of an earlier provision made in clear, explicit and unambiguous words: Tiffany on Real Property, §979.

To rule with defendants on this point would be saying that the clear, explicit and unambiguous reservation as described in the Thompson-Proctor deed was revoked by the appurtenance clause, which appears in the deed following the clear words of the reservation. The appurtenance clause is a general clause which is at times printed in written instruments and deeds, and is at times forgotten by poor scriveners.

Defendants also attack the position of plaintiff as to the mineral rights because of a covenant in the Thompson-Proctor deed in which it was agreed that all taxes were to be paid. Defendants contend that inasmuch as the taxes were not paid on the mineral rights, any reservation there may have been was canceled. To hold with defendants would mean that parties owning mineral rights and land could defeat the right of the taxing authorities to collect taxes.

In a treasurer's sale of unseated land for taxes—and the sale in which the county commissioners purchased the mineral rights was an "unseated" sale—the land itself is responsible for the taxes regardless of the question of ownership.

A new chain of title is started by every such tax sale and a person relying upon such a tax title need not make any proof as to the prior state of the title: Reinboth v. Zerbe Run Co., 29 Pa. 139, 145.

It has also been suggested that the treasurer's deed to the commissioners, which is the basis of plaintiff's title, did not aver that the commissioners paid cash for the mineral rights, and that the averment of the Lycoming County Commissioners' deed to plaintiff is insufficient in that it fails to aver any compliance with an act with respect to advertising. There has been sufficient averment. The rest is a matter of proof.

It has even been held that in the absence of countervailing evidence, the recitals in a deed from county commissioners raise a presumption that the commissioners properly discharged their official duties and conducted the sale according to law: Babcock Lumber Company v. Faust et al., 156 Pa. Superior Ct. 19.

Another objection is as to the sufficiency of paragraph 10 of the complaint.

Paragraph 10 reads as follows:

"10. That the County of Lycoming, Grantor, as aforementioned, by the deed aforementioned, dated the 20th day of December, 1945, to Robert M. Hutchison, as aforementioned, as well as by assignment dated the 1st day of December, 1947, to Robert M. Hutchison, did transfer over unto the said Robert M. Hutchison, all of the title and titles, as well as all of the causes of action, as well as any right of action, any claim or claims, any interest or any interests that the County of Lycoming ever have had, growing out of the ownership by the County of Lycoming of the property hereinbefore described, to wit, the mineral rights together with all the privileges and appurtenances thereunto belonging or in any wise appertaining, including among other things all beech, birch and maple timber on, over and under a certain tract of land consisting of 1,098 acres, situate in the Township of McIntyre, County of Lycoming, Commonwealth of Pennsylvania, and being more specifically known as Warrant No. 5651, against any and all persons, partnership, associations and corporations whatsoever, and all of the right, title and interest and demand in and to the same of the County of Lycoming; and the County of Lycoming did give and grant unto the said Robert M. Hutchison full power and authority to demands and receive the same to his own use, and upon the receipt thereof to give discharges for the same or part thereof."

Defendants contend that any right of trespass action acquired by the Lycoming County Commissioners was nonassignable; that there is no averment that the commissioners complied with the laws relating to sale of personal property by the county; that there is no averment that plaintiff paid a valuable consideration for the assignment; that the transaction between the commissioners and plaintiff whereby plaintiff purports to acquire an action in trespass is champertous.

Defendants contend this action is for unliquidated damages in tort and that the County of Lycoming, if it did acquire the rights, could not assign the same. The statement of claim asks for damages for trees cut down from December 15, 1943, to December 20, 1945, during which time the county owned the land.

It is a well settled general rule, in some States supported by statutory provisions, that a right of action in tort, which does not apply to the person strictly, but involves directly or indirectly the right of property, is assignable. 6 C. J. S. 1082. It has been held that an assignment may be made of a right of action for wrongly entering and cutting and carrying away timber: J. H. Levenworth & Son v. Hunter, 150 Miss. 245, 116 So. 593. The trend of judicial decisions as to the assignability of certain causes of action is to enlarge, rather than to restrict the causes that may be assigned.

In Pennsylvania there appear to be no appeal court decisions on point as to the assignability of a claim such as this, although it was held proper in Moffitt et al. v. Vesta Coal Company, 17 Wash. 204, to bring suit for the recovery of damages to land because of a mining operation by plaintiffs as assignees of the former owner and in their own right.

The principle of the early common law that a right of action for a tort is not assignable rested largely upon the theory that such a chose in action was not survivable. An exception was at an early day ingrafted upon this common law by the Statute of 4 Edw. III., chap. 7, which permitted the survivorship of certain actions ex delicto for injuries to personal property; and survivorship was, by a later statute (3 & 4 Wm. IV., chap. 42), prescribed for actions ex delicto for injuries to real property. See, also, Breisch v. Leitzel 22 Pa. Superior Ct. 25; North v. Turner, 9 S. & R. 244.

Some of the cases quoted by defendants concern actions which affected the person strictly. Others are

authority for the proposition that damages are a personal claim of the owner of the property at the time the injury occurs, and do not run with the land or pass by deed thereof although not specially reserved: Losch Appeal, 109 Pa. 72; Carlisle Borough v. Fladger, 157 Pa. Superior Ct. 206. In the instant case there was a specific assignment of these damages.

The case of Sensenig v. Pennsylvania Railroad Company, 229 Pa. 168, quoted by defendants, is only authority for the proposition that a right of action strictly personal is not assignable, and recognizes that property rights can be assigned, as the learned judge says (see p. 172) that "such a right does not seem to us to be a property right, capable of assignment".

The court sees no merit in defendant's contention that treble damages cannot be assigned. It is realized that the right of damages for certain penalties are incapable of being assigned. The act allowing treble damages is an outgrowth of the Act of March 27, 1824, 8 Sm. L. 282, and it has been held that the Act of 1824 does not give a new action to the owner of timber which has been cut without his consent, but merely gives a new measure of damages in the common-law actions of trespass and trover: Yocum, Guardian of Levan, v. Zahner, 162 Pa. 468.

As to the contention of defendants that there was no consideration averred in the deed of the county commissioners, there appears to be little merit in this. As long as there is a proper conveyance of the interest of the county commissioners, we see no value in the argument that consideration was not shown. In considering this case it is not up to plaintiffs to prove as to whether or not they gave proper consideration for their deed or assignment.

Defendants contend the complaint fails to aver any present cause of action inasmuch as the most plaintiff could acquire was the right to use the trees under 20

inches in diameter at the butt of the first log at the time of the reservation, and that he could only use such for mining purposes; that there is no allegation that any specific class of beech, birch and maple was cut, nor the quantity of the same; that there is no allegation that a sufficient amount of each class has not been left on the premises; that no demand has been made upon the owners of the fee; that since plaintiffs only had the right to use a specific class of tree for mining purposes there can be no cause of action until there has been an interference with the mining rights of plaintiff, and that there has been no averment that any mining has been commenced.

Although plaintiff claims ownership of all beech, birch and maple timber cut by defendants, the deeds referred to in the statement of claim indicate that reservation was made for the purpose of mining only.

The Thompson-Proctor deed reads as follows:

"For the purpose of mining upon and under the following acts the said parties of the first part save, except and reserve out of this grant . . ., for the purposes aforesaid and not otherwise, all beech, birch and maple timber of twenty (20) inches or less in diameter at the date hereof, measured at the place where the butt of the first log ordinarily would come . . ."

It has been said that a conveyance of timber for a particular purpose includes only that suitable for such purpose: Antoine Lumber Co. v. Southern Bag & Paper Co., 171 La. 695, 131 So. 852.

Also, a conveyance of timber, as far as passing title is concerned, operates in præsenti, and not in futuro, and passes only timber then existing and the natural growth of such timber: 54 C. J. S. 696.

Although it has been said in numerous cases that a person having the right to cut and remove timber growing on the land of another has the right only to take it off within a reasonable time (Andrews v. Wade,

3 Sadler 133, Boutls et al. v. Mitchell, 15 Pa. 371, Saltonstall et al. v. Little, 90 Pa. 422), it has also been recognized that a purchaser may buy growing timber, with no intention of manufacturing it into lumber, and hold it, just as he might buy and hold the land, if he so frame his contract: Patterson et al. v. Graham et al., 164 Pa. 234, 241.

We therefore have to look to the reservation in the deed in order to know just what plaintiff can ask for. In studying the reservation it is easy to be seen that reservation was made of only a certain kind of timber, and for only a certain purpose. This reservation was not only made for the benefit of the original parties to the deed, but also for the benefit of their heirs, executors and assigns.

Plaintiff will therefore have to restate his case in order to claim damages for only the trees that were in being and under 20 inches or less in diameter at the date of the Thompson-Proctor deed, measured at where the butt of the first log ordinarily would come. Plaintiff can only claim damages for those trees that were capable of being used for mining purposes.

We see little merit in defendant's contention that there must be mining commenced in order for plaintiff to recover. If plaintiff shows that there was beech, birch and maple timber cut wrongly by defendants, that such timber could be used for mining on or under the surface of the land in question, then he would have a right for damages. There was a reservation of this timber in the deed. The timber was not only reserved for the grantors of the Thompson-Proctor deed, but for their heirs and assigns.

Cases have been called to our attention in which timber was reserved for mining and in which it was ruled that only so much of the timber as was reasonably necessary could be used. These cases were based upon reservations which gave the right for the use of the

timber needed for the carrying on of mining. The instant case differs in that all of a certain kind of timber was reserved for the purpose of mining.

In paragraph 13 of the statement of claim plaintiff asks treble damages by reason of the cutting.

The damages are improperly stated. In order for plaintiff to recover treble damages he has to allege the act under which he is attempting to recover treble damages, which has been done, and he has to allege that the trees were wilfully, negligently or maliciously cut down or felled by defendants without the consent of the owner, and converted by defendants to their own use. The value of the trees where they stood before the cutting must also be asserted.

Objections are made as to the affidavits attached to the complaints and as to the fact that plaintiffs have failed to attach copies of the assignments pleaded in paragraph 10. These affidavits should be corrected and the assignments should be attached to the pleadings.

The only other objection is as to the claim with respect to damages. Plaintiff in paragraph 11 claims $52,334.40 for the value of trees cut down, in paragraph 12 claims $20,000 for the lessening in value of the premises, and in paragraph 13 claims treble the amount of said damages by reason of the Act of June 24, 1939, P. L. 872.

Plaintiff should be more specific in his statement. If he means that the mining rights were lessened in value because of the fact timber for mining is gone, then he may possibly have another claim, in addition to a claim for damages for cutting the timber.

And now, February 10, 1949, the preliminary objections are sustained for the reasons stated, plaintiff, however, to have 30 days within which to file an amended statement of claim.