90  151
d104 529

# Wytheville.

## Mumpower v. City of Bristol.

### July 13th, 1893.

Water Courses—*Milldam owners—Injunction.*—Owner of dam in stream of water cannot enjoin prior owner of dam above his from damming back the water for purpose of raising a pond sufficient to supply his mill with water for operating his machinery, although such use at times keeps back the water to the extent of depriving the lower owner of water.

Appeal from decree of circuit court of Washington county, rendered May 9, 1892, in the chancery cause wherein the city of Bristol was plaintiff and Wm. H. Mumpower, the appellant, was defendant. The object of the suit was to enjoin the appellant from damming back the water of a natural stream so as to cut off the appellee's supply of water. The circuit court perpetuated the injunction awarded, and the defendant appealed. Opinion states the case.

*Fulkerson, Page & Hurt,* for appellant.

*Hamilton, Rhea & Peters,* for appellee.

Lacy, J., delivered the opinion of the court.

The bill was filed by the appellee, alleging that it was the owner of a water works dam erected across Mumpower Creek for the purpose of raising a pond of water sufficient to supply the said appellee, the city of Bristol, with water.

That some seventeen years before the erection of its dam the appellant was the owner of a mill dam several hundred yards above, across the said creek, erected and used from that time to the present time for the purpose of raising a pond of water for the purpose of supplying his mill with water to operate the machinery of its water grist mill; that the dam of the said appellant holds back the water so as to deprive it of water at times, and that its rights are thus invaded, and praying an injunction against the said appellant to prevent him from damming back the water of the said stream so as to cut off its supply of water.

The appellant demurred and answered, and denied that the water works dam of the appellee was sufficient to supply it with water, and denied that he had diverted the water of the stream from its natural channel; stated that his parents had used and operated this mill and fixtures for many years, and he himself succeeding them, had operated this mill continuously since 1875, and insisted that he had the right to use the water in such way as was necessary to operate his mill, and denied that he had used the water in any improper manner either to divert it or to pollute it.

The cause came on to be heard upon the depositions taken in the cause and upon the foregoing. The court upon the hearing, being of opinion that the defendant had threatened to pollute the water, and had unreasonably detained the water, conceding his right to use the water for his mill, decreed that the defendant be perpetually enjoined from entirely cutting off or so far diminishing the natural flow of the stream in controversy as that by reason thereof the plaintiff shall not at all times have a reasonable supply of water from the said stream, and that the defendant pay the costs.

From this decree the defendant applied for and obtained an appeal to this court.

The stream ·in question is a natural stream of water, and

both parties have a natural right to the use of the water of the said stream.

The appellant, W. H. Mumpower, has no right by prescription to obstruct the water of this stream, as his use has not extended to twenty years uninterruptedly in any particular manner adverse and injurious in its nature. No such presumptive right can arise from an adverse use for a less period. *Cornett* v. *Rhudy*, 80 Va. Rep. 714, and authorities cited.

We have to deal here with the natural right of two riparian owners to the use of the water of a stream. The right of any riparian owner to the use of the water of a running stream is a right inherent in the land as a right *publici juris*. And the right to the use of the water as a general rule is limited to such use as is not inconsistent with a like reasonable use by the other riparian owners on the same stream above and below. But in a controversy between the owners of two dams over the same stream, the proprietor who first erects his dam for a useful purpose has a right to maintain it, as against the proprietors above and below. And to this extent, prior occupancy gives a prior right to such use. It is a profitable, beneficial, and reasonable use, and, therefore, one which he has a right to make. If it necessarily occupy so much of the fall as to prevent the proprietor above from placing a dam or mill on his land, it is *damnum absque injuria*.

For the same reason the proprietor below cannot erect a dam in such manner as to raise the water and obstruct the wheels of the first occupant. He had an equal right with the proprietor below to a reasonable use of the stream; he had made only a reasonable use of it; his appropriation to that extent being justifiable and prior in time, necessarily prevents the proprietor below from raising the water and interfering with a rightful use already made; and it is therefore not an injury to him.

It was decided in the case of *Lincoln* v. *Chadburne*, 56 Me., 197, that as between proprietors of dams on the same stream,

he has the better right who was first in point of time. In that case it appeared that of three dams, situated within a short distance of each other on the same stream, each erected by or with the consent of the riparian proprietor on whose land it stands, the middle one belonged to the plaintiff, the lower one to the defendant. And the plaintiff's dam was originally erected before the defendant's. Burrows, judge, said:

"The plaintiff having erected his dam before the defendant had made any movement of the sort, had, so far as the defendant was concerned, a perfect right to maintain it perpetually, and to recover for any injury which the defendant might inflict by means of any subsequent erection below him. Unless he abandoned the right, the temporary destruction of his dam, whether by accident or by design, would not enable the defendant to acquire as against him the rights of a prior occupant."

Such appears to be the nature and extent of the prior and exclusive right which one proprietor acquires by a prior reasonable appropriation of the use of the water in its fall; and it results, not from any originally superior right, but from the legitimate exercise of his own common right, the effect of which is *de facto*, to supersede and prevent a like use by other proprietors originally having the same common right. But the right which is thus acquired is not so absolute as to give him the control of the whole stream, or to deprive other proprietors of the reasonable enjoyment of the privileges to which they are naturally entitled. They may still construct and maintain dams across the stream at any point either above or below his mill, for the purpose of raising a head of water to propel, operate, and work mills of their own erected on the adjoining land, provided that their arrangements are so made that they will not unreasonably withhold and detain the water above, nor throw it back from below, so as to affect, impede, delay, or obstruct the movement and operation of the wheels and machinery of his previously existing mill. *Thurber* v.

*Martin,* 2 Gray. 394; *Smith* v. *Agawam Canal Co.,* 2 Allen, 357.

But such appropriation of the stream to mill purposes, upon the principles stated, gives the proprietor a prior and exclusive right to such use only so far as it is actual. If, therefore, he has erected his dam and mill, with its waste ways, sluices, and other fixtures necessary to command the use of the water to a certain extent, and there is a surplus remaining, the proprietor below may have the benefit of that surplus. *Elliott* v. *Frickbury Railroad Co.,* 10 Cush., 198; *Fuller* v. *Chicopee Manuf. Co.,* 16 Gray; *Smith* v. *O'Hara,* 43 Cal., 371. Angel on W. C., § 131. Running water is considered, not as *bonum vacans,* to which the first occupant might acquire an exclusive right; but as public and common, in this sense only, that all that have a right of access to it might drink it, or apply it to the necessary purpose of supporting life, and that no one had any property in the water itself, except in that particular portion, which he might have abstracted from the stream, and of which he had the possession, and during the time of such possession only.

In this case the appellant having first erected his dam and mill, for the useful and lawful purpose for which it was designed, had thus, without acquiring any prescriptive right, acquired the right to a reasonable use of the water for the purposes of his mill, and without the right to pen back the water so far as required for the operation of his mill, his mill would be useless. But he is not entitled to pen back the water to a greater extent than is necessary for his operations. And in this case there is no pretense that he has done this; he has not diverted it nor polluted it; simply penned it back until it came to the necessary height, and this was longer or shorter in time, according to a wet or dry season. The plaintiff was entitled to the surplus only; this he had. The defendant has not polluted the water, nor attempted to do so; and it is clear that the plaintiff had no cause of action if he did

not have enough water; it had a simple remedy by raising its dam; it would then have all the water that the defendant had, all the water the stream afforded. And this it has done, and having raised its dam since this suit was brought, so that by making a dam of sufficient size it will doubtless have a sufficient supply of water, because the defendant, as we have seen, does not destroy nor divert it, but it all ultimately goes on over its dam or through its race and water ways and sluices. It follows that the bill of the plaintiff should have been dismissed with costs, and the said decree having decided otherwise, we are of opinion to reverse and annul the same, and render here such decree as the said circuit court ought to have rendered.

DECREE REVERSED.