# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## Rankin and Others v. Town of Harrisonburg.

### November 23, 1905.

1. Eminent Domain—*Raising Dam—Riparian Owners—Compensation.*
   —Where the effect of raising a dam in a river is to flood its banks, impose upon its bed a greater volume of water, destroy fords, render adjacent lands more liable to overflow, and greatly to alter the natural flow and condition of the stream, adjacent riparian proprietors affected thereby are entitled to compensation from the person asking to have the dam raised.

2. Parol Agreement—*Water Power—Pendente Lite Deed.*—A parol agreement between the owners of opposite banks of a stream to divide between themselves in designated proportions the compensation to be received for the power furnished by the stream, whether the same should be granted by the owners or taken and appropriated against their consent, if fairly entered into between the the parties, is mutually binding on them, and they may lawfully execute a deed carrying such agreement into effect pending proceeding to condemn the power.

3. Eminent Domain—*Power Furnished by a Stream—Rights of Riparian Owners.*—Riparian owners have a right to a stream flowing through their lands in its natural condition, and may protect that right not only for present needs but for possible future ones; and, although no one of the riparian proprietors owns the banks on both sides of the stream, nor has the right to erect a dam across it, and no two or more of them, as co-tenants, owns said banks or have the right to erect a dam across it, yet each owns an interest in the power furnished by the stream, although not actually applied, which may be united in one ownership, or be held as co-tenants, and this interest cannot be taken for public use without making just compensation to the owner thereof.

Error to a judgment of the Circuit Court of Rockingham

county, in a condemnation proceeding instituted by the town of Harrisonburg. Judgment for plaintiff. Defendants assign error.

*Reversed.*

The opinion states the case.

*Sipe & Harris,* for the plaintiffs in error.

*T. N. Haas* and *J. B. Stephenson,* for the defendant in error.

Keith, P., delivered the opinion of the court.

The town of Harrisonburg gave notice to Henry L. Rankin and others that at the November term of the Circuit Court of Rockingham county, it would apply for leave to raise the dam across the Shenandoah river, which it had acquired under a conveyance from the Rockingham Milling Company, from a height of five feet to fifteen feet, in order to secure water power for an electric light plant for the use of the town. This notice was served upon divers persons owning land abutting upon the river, and in due course commissioners were appointed, who submitted a report to the court, to which numerous exceptions were filed. Some of these exceptions have reference to the form of the proceedings, and are brought to the attention of this court in the petition for a writ of error; but at the hearing it was agreed that all errors merely of procedure should be waived and that our judgment should be rendered upon the controlling question in the case, arising upon the tenth paragraph of the report of the commissioners, which is in the following words:

"From the end of the eddy or back water of the old dam at the Shaver or Ammon mill site, which was five feet high, up *to* the river to the end of the eddy or back water which will be made by the new dam, a distance of about a mile and a half, there is a fall of about ten feet in the river which the applicant gets the benefit of in the development of its power by raising the

dam from the elevation of the said old dam to the height of fifteen feet. This ten feet of fall occurs in that part of the river which is abutted by the lands of Dr. Rankin and Mrs. Burke on the east or south and by the lands of Mrs. Walker on the west and north. Your commissioners ascertain that the water power gained by the applicant by this ten feet of fall through the lands of Rankin, Burke and Walker, as aforesaid, is worth the sum of three thousand dollars ($3,000.00), and that the applicant shall pay the sum of $3,000.00 as compensation therefor.

"It appeared by statement of counsel of Mrs. Walker, Mrs. Burke and Rankin, that it was agreed by their said clients that the compensation to be allowed for this water power owned by them should be divided among them in the proportion of one-half to Mrs. Walker, one-fourth to Dr. Rankin and one-fourth to Mrs. Burke. Your commissioners therefore report that, of the said sum of $3,000.00 to be paid by applicant as compensation for said ten foot fall in the river, through the lands Mrs. Walker, Mrs. Burke, and Dr. Rankin, as aforesaid, $1,500.00 thereof shall be paid to Mrs. Walker, $750.00 thereof shall be paid to Mrs. Burke, and $750.00 thereof shall be paid to Dr. Rankin."

The town of Harrisonburg excepts to paragraph ten of the report, by which it is required to pay $3,000 as compensation for the water power, on the ground, that "the said supposed water power for which said compensation or damages of $3,-000.00 is found and allowed, is not proper to be taken into consideration as an element of damages to be compensated for by applicant, because there is no developed or existing water power in the distance mentioned in said report through which the eddy water of the proposed dam of applicant will extend, and no such power can, under the physical conditions existing, be created or developed without the construction of a dam across the river, and neither the said three persons, nor any two of them, as co-tenants, nor any one of them in severalty, own

or owned both banks of the river, or land on both banks, in the distance measured by said eddy water, nor do they or any two of them, as co-tenants, or any one of them severally, own the right to abut a dam on both banks of the river at any place within the said distance, but they, the said three persons, own their lands in severalty, the land of Mrs. Walker laying on one side of the river, and the lands of Mrs. Burke and Dr Rankin lying on the other side of the river, the middle of the river being the boundary of said lands; wherefore it cannot be said that any one of them separately possesses, or that all or any two of them jointly possess, a water power to be damaged or compensated for as such."

Upon the issue thus presented the Circuit Court decided in favor of the town of Harrisonburg, and refused to allow any compensation to Henry L. Rankin, Columbia J. Burke and Emma E. Walker, but provided that the town of Harrisonburg should, at its expense, "construct where the private ford now is across the said Shenandoah River, just above the three springs, and connecting the land of said Henry L. Rankin, on the east side of the river, with the land of said Emma E. Walker, on the west side, or immediately nearby, and in lieu of and as compensation for the destruction of said ford by the refluent water, a suitable and adequate ferry, which ferry the applicant shall forever maintain and keep in repair, but shall not bo required to man or operate it, the same to be appurtenant to the farms of said Henry L. Rankin, Columbia J. Burke and Emma E. Walker and for the use of the owners thereof without charge," etc.

To this order, Rankin, Burke and Walker obtained a writ of error.

The facts set out in paragraph ten of the report of the commissioners, and in the exceptions filed by the town of Harrisonburg, show, that there has been an actual taking of the property of plaintiffs in error for the use of the defendant in error. The plaintiffs in error own the lands abutting upon the stream;

they own its banks and the bed over which the water flows. The effect of raising the dam to an additional height of ten feet is to throw back the water of the river for a long distance beyond the boundary line of plaintiffs in error, to flood its banks, impose upon the bed a greater volume of water, destroy the ford, render the adjacent lands more liable to overflow, and greatly to alter the natural flow and condition of the stream. This would of itself entitle the plaintiffs in error to compensation.

"Although, as will be seen is a subsequent section, there are a few cases which apply to the damming back of water, the rule that to entitle one riparian owner to complain of acts of another he must show that he has been injured, those decisions are not only against the weight of authority, but also are unsupported by principle. Any swelling of the stream over the line is an invasion of the rights of the upper owner, who has a right to the stream in its natural condition, which he may protect, not only for present needs, but for possible future ones. It constitutes a direct trespass upon his property which he may seek the aid of the courts to redress, and he is not bound to show that he is specially injured to maintain the action. The right of the upper owner is strengthened if injury is done to him, as by the flooding of a building, or of a mining claim, or of a ford. . . . As a general rule, a riparian proprietor is restricted in the management of his property by the maxim, *Sic utere tuo ut alienum non laedas,* and he cannot take the initiative and construct a dam on a stream that will cause the water to overflow and injure the land of his neighbor, that may lie opposite or above his own premises, either when the water is at its usual height, or in an ordinary freshet; or that so obstructs its flow as to prevent the land of the other riparian proprietor from being properly drained. The maxim of the common law, that the owner of the soil has absolute dominion over it above and below the surface, and that damage caused to others by his rightful command over his own soil is

*damnum absque injuria,* has no application to such a case. Throwing the water back on the upper land is a nuisance in and of itself, of which the upper owner may complain whenever he desires to do so, whether it is a direct injury to him or not. He has a right to have his land free from the water and can object to its presence whenever he chooses; and the lower owner has no right in the premises." 2 Farnham on Waters and Water Rights, sec. 547.

Nor do we find anything in the case of *Mumpower* v. *City of Bristol,* 90 Va., 151, 17 S. E. 853, 44 Am. St. Rep. 902, which militates against this view of the law. In that case it was held that "the owner of a dam cannot enjoin the owner of a dam above from damming back water for operating his machinery, although such use at times keeps back the water to the extent of depriving the lower owner of water." The facts in that case and the law applicable to them bear no analogy to the subject now under consideration.

It further appears that, anticipating the objection successfully urged before the Circuit Court by the town of Harrisonburg, plaintiffs in error entered into a verbal agreement that the "compensation to be received for the said water power, whether the same should be granted by the owners or taken and appropriated against their consent, should be distributed among those owning the premises in the proportion of one-half to Mrs. Walker and one-fourth each to Rankin and Mrs. Burke;" and on the 25th of January, 1905, while this proceeding was pending before the Circuit Court, they executed a deed, *inter se,* by which they bound themselves to carry into effect this verbal agreement. When, in answer to the objection urged by the town of Harrisonburg, that no one of plaintiffs in error "separately possesses, or that all or any two of them jointly possess, a water power to be damaged or compensated for as such," this agreement was offered in evidence, objection was made

to the verbal agreement on the ground that it was void under the statute of frauds, and to the deed, that it could not take effect because it undertook to change the title to the property in dispute *pendente lite.*

If the statute of frauds applies, it must be because it is a contract for the sale of real estate, or for the lease thereof for more than a year. There is no other provision of the statute of frauds which can have any bearing upon it. If the parol agreement must be held to be void upon that ground—that is, as being a contract for the sale of real estate—it would seem to be conclusive of the first question considered, that is to say, that an interest in real estate belonging to plaintiffs in error was being taken for the use of defendant in error. But assuming, and there is nothing to the contrary, that the parol agreement was fairly entered into between the parties, it was mutually binding upon them, and it was proper for them to execute the deed which carried it into effect.

But however that may be, there is another view of the case which seems to be conclusive. It is not denied by defendant in error that plaintiffs in error in severalty own parcels of real estate, which, if united in one ownership, or if held as co-tenants, would constitute an entirety of much value. The contention is, that "there is no developed or existing water power in the distance mentioned in said report through which the eddy water of the proposed dam of applicant will extend, and no such power can, under the physical conditions existing, be created or developed without the construction of a dam across the river, and neither the said three persons, nor any two of them, as co-tenants, nor any one of them in severalty, own or owned both banks of the river, or land on both banks, in the distance measured by said eddy water, nor do they or any two of them, as co-tenants, or any one of them severally, own the right to abut a dam on both banks of the river at any place within the said distance." They owned, however, in severalty, rights as abutting owners upon the river, which if held as co-

tenants, or if brought under the control of a single owner, constitute a valuable property right. If that be so, it is plain that the right to constitute themselves co-tenants, (as they unquestionably had a lawful right to do before the interference with that right on the part of the town of Harrisonburg), would be made valuable by which interests held in severalty, and which existing in severalty are valueless according to the argument of the town of Harrisonburg, is of itself a thing of value; and that right is destroyed, if the town of Harrisonburg be allowed to come in and condemn the share of one or of two, as completely as though the whole had been taken.

And again, it cannot be denied that if the town of Harrisonburg can acquire the rights now held by plaintiffs in error, it will have obtained property of very considerable value. Can it be that it can come in and by force of the right of eminent domain take without compensation the several parts constituting a valuable entirety? The sum of the parts is equal to the whole, in law and in logic, and if the entirety be of value the parts which constitute the entirety must potentially be of an equal value.

Water privileges and water power can now be put to uses not dreamed of in the past. By the generation of electricity power can be transmitted to a distance, no absolute limit to which has yet been fixed, and thus becomes subservient to all the uses to which, in the marvelous growth. of modern industry, force in its varied manifestations of heat, light and motion is applied. Water power, therefore, so far from being less valuable than heretofore, acquires an additional value as the possibilities of the generation and transmission of force by means of electricity are from day to day disclosed, and the courts should be careful not to introduce or to sanction refinements, by which the value of those rights to riparian owners may be diminished or impaired.

Having reached the conclusion that plaintiffs in error were

entitled to recover damages, we think the evidence sufficient to justify the amount awarded them in paragraph ten of the report, and that the judgment of the Circuit Court should be reversed.

*Reversed.*