## CITY OF ALLEGAN *v.* VONASEK.

1. EMINENT DOMAIN—ELECTRIC LIGHT AND POWER PLANT—NECESSITY—PERMITS.

   In condemnation proceedings by city for purpose of establishing hydro-electric light and power plant, refusal of trial judge to direct finding of no necessity because permits from Federal power commission and board of supervisors were not shown to have been complied with, *held,* not error; such failure, if any, relating to jurisdiction rather than necessity.

2. SAME—NECESSITY—TRIAL—INSTRUCTIONS.

   That judge, in condemnation proceedings, in response to questions by jurors respecting basis of compensation, said nothing about necessity, *held,* not prejudicial, where by full and final instructions jury was told that its first duty was to determine question of necessity.

3. SAME—VIEW OF PREMISES—ENGINEERS—COUNSEL.

   In condemnation proceedings statement by judge that engineers and counsel on both sides would be permitted to accompany jury to examine premises, was not error, where exigencies of case required some such action by court; and especially where there is no showing that jury was so accompanied or that prejudice resulted because of court's action.

4. SAME—EVIDENCE—NECESSITY—COST OF MANUFACTURING ELECTRICITY.

   In proceedings by city to condemn property for purpose of establishing hydro-electric light and power plant, testimony of experienced electrical engineer as to cost of manufacturing electricity .by means proposed was admissible, since evidence of cost compared with prevailing rates has some tendency to show necessity.

5. SAME—NECESSITY JUDICIAL QUESTION.

   Necessity in this State, under Constitution, is judicial question.

6. SAME—DECLARATION OF NECESSITY BY COUNCIL—PRIMA FACIE EVIDENCE.

   Under statute requiring declaration by common council that proposed public improvement is necessary and that they deem it necessary to take described private property for said im-

On necessity of taking particular land by eminent domain as a judicial question, see annotation in 11 L. R. A. (N. S.) 940; 22 L. R. A. (N. S.) 2.

provement, resolution of said body declaring public necessity, pursuant to statute, is *prima facie* evidence of necessity (1 Comp. Laws 1929, § 3784 *et seq.*).

7. SAME—NECESSITY JURY QUESTION.
Question of necessity, in condemnation proceedings, is for jury.

8. SAME—DAMAGES—WATER-POWER VALUE—INSTRUCTIONS.
In proceedings by city to condemn property for purpose of establishing hydro-electric light and power plant, instruction that landowner is entitled to damages based on most advantageous and profitable use that he can make of his land was not misleading as to water-power value, where followed by instructions at great length relative to water-power value.

9. SAME.
On question of damages, as relating to water-power value, whether use of condemned lands for water-power purposes was to be reasonably expected in immediate future, *held,* under all evidence, question for jury.

10. SAME—DAMAGES—VERDICT WITHIN EVIDENCE CONCLUSIVE.
Where verdict of jury on question of damages is within evidence, it must be sustained.

Appeal from Allegan; Miles (Fred T.), J. Submitted October 11, 1932. (Docket No. 69, Calendar No. 36,775.) Decided December 6, 1932. Rehearing denied January 25, 1933.

Condemnation proceedings by City of Allegan, a municipal corporation, against Joseph Vonasek, Consumers Power Company, and others to obtain property for establishment of a hydro-electric power plant. From verdict and judgment rendered, both parties appeal. Affirmed.

*Leo W. Hoffman* and *Clare E. Hoffman,* for plaintiff.

*Harry C. Howard,* for defendants Vonasek and others.

*Wilkes & Stone,* for defendant Kaurzinsky and others.

*Bernard J. Onen* and *Walter D. Kline,* for defendant Consumers Power Company.

CLARK, C. J. On the former appearance of this case the judgment was reversed and new trial ordered. *City of Allegan* v. *Vonasek,* 259 Mich. 310. Another trial has been had resulting in verdict and judgment for plaintiff. Defendants have appealed.

The plaintiff, city of Allegan, sought, by these proceedings in condemnation, to take property of the several defendants for the establishment of a hydro-electric light and power plant upon the Kalamazoo river. The site of the proposed dam is called Calkins site, and is a few miles downstream from the city. The area required for pond is 1,700 acres. The city has already acquired by purchase nearly one-half the acreage. Part of the land sought is used in farming and is owned by farmers. Part of it is owned by Consumers Power Company, which purchased for the purpose, it is averred, of constructing a dam at what is called Manlius site, six miles below the Calkins site. The evidence, aside from that on the question of necessity, presents a chiefly controverted question on water power value. Many questions are raised on an extremely large number of assignments. We shall discuss those of appealing merit.

1. A permit from the Federal power commission required certain installation within a certain time, and a permit from the board of supervisors provided for payment annually to the respective township treasurers of a sum equal to the total of all of certain taxes and the payment to be made when the lands are acquired and have been withdrawn from the assessment rolls.

The trial judge was requested to direct a finding of no necessity because these permits were not shown to have been complied with.

If there were such failure it might relate to jurisdiction but hardly to necessity, so it was not error to refuse the request. Moreover, a showing has been made, without objection, that the Federal permit has been extended as to time, and it does not appear that lands have been withdrawn from the assessment rolls, and it does appear that the needed lands have not yet been acquired.

Plaintiff did obtain the requisite permits. Whether the matter of strict performance of the conditions of the permits may be asserted only by the proper public authorities, or by defendants as well, is a question unnecessary to decision.

2. Toward the close of the trial, in response to questions by jurors respecting the basis of determining compensation, the judge answered at length, and in that answer or instruction said nothing of necessity. There was no prejudice in this for, by full and final instructions of the judge, the jury was plainly told that its first duty was to determine the question of necessity.

3. The jury was directed to go to the place of the intended improvement in charge of an officer and to examine the premises. The limits of the land to be taken were marked by stakes, as was also the limit of flooding, and the lines of each parcel of the several defendants were also marked by stakes. Apprehending difficulty for the jury in locating property lines and in distinguishing the many parcels, the judge, after colloquy with counsel, said:

"I know the difficulty that arose last year (former trial). We didn't know where these lands began and ended and the engineers on both sides will be permitted to go and counsel, too, if they so desire."

Complaint is made of this, especially as to plaintiff's engineer. The exigencies of the case required some such action by the court, which we hold not to be error (*Zug* v. *City of Pittsburg,* 194 Pa. 367 [45 Atl. 61]), and it may be noted that we are cited to no page in this large record showing that the jury was so accompanied, nor is there any showing of prejudice because of the court's action.

4. The judge defined necessity, following *Commissioners of Parks* v. *Moesta,* 91 Mich. 149, and submitted the question under instructions which present no reversible error. It is urged that there was no showing of public necessity. The place was being served chiefly by defendant Consumers Power Company and in part by a small plant of plaintiff, and it is argued that there was therefore no public necessity for the proposed improvement. Plaintiff had testimony of an experienced electrical engineer, experienced in the manufacture of electricity by the means proposed, who made a survey or study of the matter, and from his experience stated the cost of manufacturing or producing the energy. In the field of business, when it is proposed to erect a plant to manufacture an article to be sold in trade, it is common practice to call in men, skilled and experienced, to state the cost of manufacturing the particular article, and, receiving a satisfactory statement, to make investments relying thereon. Such statements, readily accepted in business, are also acceptable in evidence. 22 C. J. p. 542; *Carter* v. *Studdard,* 118 Miss. 345 (79 South. 225); *Ingham Lumber Co.* v. *Ingersoll,* 93 Ark. 447 (125 S. W. 139, 20 Ann. Cas. 1002). Evidence of cost compared with prevailing rates had some tendency to show necessity. Necessity in this State, because of the peculiar language of our Constitution, is a judicial question. *Hendershott* v. *Rogers,* 237 Mich. 338. In nearly

all other jurisdictions necessity is legislative, and the prerogative of taking property on its own estimate of necessity is exercised by the legislature or by those agencies to whom power has been delegated, and the sole duty of jury or commissioners is to assess damages. In other jurisdictions, it would be held in this case that necessity had been fully and finally determined before the jury was called. Nevertheless, the statute under which this proceeding is brought, 1 Comp. Laws 1929, § 3784 *et seq.*, in common with other like statutes, requires a declaration by the common council that the public improvement is necessary and that they deem it necessary to take described private property for the improvement. Generally, such resolution and other provided preliminaries are required to be shown on jurisdictional grounds. But the legislative purpose is not satisfied on purely jurisdictional considerations. The resolution of this public body, declaring public necessity, pursuant to statute, is *prima facie* evidence of necessity. See *Ziegel* v. *Genesee County Bd. of Rd. Com'rs*, 241 Mich. 161.

The question of necessity was for the jury, and its verdict will stand.

5. In the former opinion, it was said:

"Defendant Consumers Power Company owns land along the river which, in union with lands of other riparian proprietors, possesses potential value for water-power purposes."

And, after discussing an instruction given on the former trial:

"Counsel for the power company cites *Rankin* v. *Town of Harrisonburg*, 104 Va. 524 (52 S. E. 555, 3 L. R. A. [N. S.] 919, 113 Am. St. Rep. 1050), where it was held that (syllabus):

" 'Although no one of the riparian proprietors owns the banks on both sides of the stream, nor has the right to erect a dam across

it, and no two or more of them, as cotenants, owns said banks or have the right to erect a dam across it, yet each owns an interest in the power furnished by the stream, although not actually applied, which may be united in one ownership, or be held as cotenants, and this interest cannot be taken for public use without making just compensation to the owner thereof.'

"Upon the retrial the instruction above quoted should be modified to conform with the holding in the *Rankin Case*, limiting consideration, however, to such uses as may be reasonably expected in the immediate future."

In instructing of compensation or damages, the trial judge said:

"The land owner is entitled to damages based upon the most advantageous and profitable use that he can make of his land."

The excerpt is urged as error and as violative of the law of the case as stated in the former opinion, and, in respect of water-power value, it is contended that no single owner could use his land for water-power purposes.

The instruction is correct enough, as applied in ordinary circumstances, or as applied to any feature of the case except water-power value, and in that regard it could not have been misleading for instructions following the quoted opinion and relative to water-power value were given at great length.

We quote in part:

"If you find that, independent of the city's proceedings, these parcels had a value for water-power purposes, you are to consider this value for such purpose in determining its value for its most advantageous use.   *   *   *

"All of the lands in question, in union with the lands of other riparian owners along the river, possess potential value for water-power purposes. Our Supreme Court has said the definition of the word 'potential' is 'having latent power, endowed with

energy adequate to a result, efficacious, existing in possibility, not in act.' 'Potential existence means merely that the thing may be at some time; actual existence, that it is now.' In awarding compensation, you are to take into consideration this potential value for water-power purposes or potential water power and award such a sum as will fairly compensate for its taking, 'limiting consideration, however, to such uses as may be reasonably expected to be made within a reasonable time.' *  *  *

"In determining the market value of the lands of Vonasek *et al.,* you must consider the water-power value of these lands, if any, and the availability to be used for pond values.

"Evidence has been offered in this case that certain parcels of land were more valuable because they could be used as part of a plan for the construction of a hydro-electric plant, that is, that the owners could get more out of these lands for that purpose than for any other purpose and, if you find that the owners could get more out of the property for that purpose and that there is a reasonable probability that they would be able to do so within a reasonable time, then they are entitled to damages based upon that theory. *  *  *

"In this case, it appears that, as to one parcel owned by the Consumers Power Company, that company owns both sides of the river. As to the other parcels, the ownership on one side is in one person, on the other, in another, and I instruct you that, although neither the Consumers Power Company nor any one of the individual owners has the right to erect a dam across the river, and, although no two or more of them have such right, yet, each individual owner, and when I say individual owner, I include the Consumers Power Company, because it may be classed as an individual, owns an interest in the power furnished by the stream, all of which may be united in one ownership or which may be held as cotenants, and this interest of the Consumers

Power Company or of these individual owners cannot be taken for public use without making just compensation therefor, provided there is a reasonable probability that the lands, whether under the river or on the low lands, and the power rights incident thereto can be used for that purpose within a reasonable time.''

While there are numerous assignments on instructions and requests respecting compensation, we think further discussion would be without profit, having the view that, by the instructions quoted and many others not here quoted, the law of the case was followed and the question of compensation fully and fairly submitted.

6. While the lands on or near the stream had some potential value for water-power purposes, the law of the case above stated limited consideration of such use to one that ''may be reasonably expected in the immediate future,'' and the jury was instructed accordingly, as we have seen.

The improvement which the city proposed could not be considered as affecting value of the lands here sought to be taken. The circumstance here urged as affecting the value of such lands is the possibility of their sale or use for the purpose of erecting a dam at the Manlius site, it being said that the lands in question would be within the area required for such project. About 1906, the Consumers Power Company was considering the Manlius site, but it concluded the Robinson site, so-called, in the city of Allegan, more feasible, but, after some effort, was unable to secure it. In 1925 or 1926, about the time the purpose of plaintiff to furnish electricity to its inhabitants began to be manifest and to be expressed, the Consumers Power Company acquired some parcels within the area required for a dam at

the Manlius site, some of them being within the area at the Calkins site. There is testimony, which space forbids us to review, covering probability and improbability of development at the Manlius site. We pass the suggestion that a private person or corporation could not take from the city lands which it had acquired for a public purpose within the area of the Calkins site, and that, therefore, no sale of these lands for water-power purposes, except to the city, was possible. Appellants' contention in this regard is, in effect, that, apart from the city's purpose to take the lands, there was established as a matter of law a use of these lands, "reasonably expected in the immediate future," namely a sale to or use by the Consumers Power Company, and that, therefore, the defendants were entitled as a matter of law to full water-power value, as fixed by the testimony at $150 per acre. We cannot so hold. Whether any such use was to be reasonably expected in the immediate future was, under all the evidence, a question for the jury. The amount of the verdict indicates a finding that such use was not reasonably to be expected in the immediate future, for the jury accepted other evidence of value, as it might do.

The verdict, as we have said many times in other cases, is within the evidence and not against it, and must be sustained.

Able counsel have shown remarkable diligence and vision in raising questions for review. We have considered all those presented, and, it appearing that further discussion would be without benefit, we conclude by saying that no reversible error is found.

Affirmed.

MCDONALD, POTTER, SHARPE, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.