*In re* ACQUISITION OF LAND FOR CIVIC CENTER.
CITY OF DETROIT *v.* SALLOUM.

1. EMINENT DOMAIN—DELAY BEFORE COMMENCEMENT OF CONDEMNATION PROCEEDINGS.

Lapse of 22 months between adoption by common council of city of resolution of necessity in connection with condemnation proceedings of land for a large civic center and the inception thereof in court was not such an unreasonable delay as to be ground for dismissal in view of the magnitude of the undertaking and necessity for engineers' prints outlining lands to be taken, title research and that sole motion for adjournment was made by defendants' attorney.

2. JURY—PEREMPTORY CHALLENGES—COMMON LAW.

There is no right at common law to peremptory challenges.

3. SAME—JURY BOX—CONDEMNATION PROCEEDINGS.

Depositing by board of jury commissioners of slips bearing names of potential jurors in "the jury box" and withdrawal therefrom of slips with names of jurors are things to be done before the jurors are summoned into court for the term and do not refer to the process of drawing names by the clerk of the court after a particular condemnation case has been begun.

4. EMINENT DOMAIN—SELECTION OF JURY—CHARTERS—STATUTES—OVERRULED CASE.

Provision of home-rule city charter as to selection from condemnation panel of a jury for the trial of a condemnation case pending in court was not repealed by subsequent stat-

REFERENCES FOR POINTS IN HEADNOTES
[1] Generally as to condemnation proceedings, see 18 Am Jur, Eminent Domain § 307 *et seq.*
[2] 31 Am Jur, Jury § 187.
[3–5] 31 Am Jur, Jury § 60.
[8] 18 Am Jur, Eminent Domain § 352.
[10–13] 18 Am Jur, Eminent Domain §§ 334, 335.

ute as to selection of panel of jurors, overruling, in part, *In the Matter of Widening Michigan Avenue, Roosevelt to Livernois Avenues,* 281 Mich 95 (CL 1948, §§ 725.123, 725.152; Detroit Charter, title 8, ch 1, § 6).

5. SAME—HOME-RULE CITY—NUMBER OF PEREMPTORY CHALLENGES—STATUTES—CHARTERS—COURT RULE.

Provision of home-rule city charter granting a maximum of 6 peremptory challenges collectively on a side in condemnation proceedings brought by the city *held,* controlling in city's proceedings to condemn land for civic center as authorized by statute rather than 5 peremptory challenges to each party as permitted by court rule of recorder's court of such city (CL 1948, §§ 213.88, 213.94; Detroit Charter, title 8, ch 1, § 6; Recorder's Court Rule No 27).

6. SAME—CONDEMNATION PROCEEDINGS—PRESENCE AND FUNCTION OF TRIAL JUDGE—JURY.

A trial judge need not be present in the courtroom at all times during the taking of testimony in a condemnation proceeding as he acts only in an advisory capacity and cannot give binding instructions; the jury being the judges of both facts and law.

7. SAME—NATURE OF CONDEMNATION PROCEEDINGS.

Proceedings to condemn land are special and summary in character and, while subject to judicial review and supervision for certain purposes, are not judicial proceedings.

8. SAME—DETERMINATION OF NECESSITY—COST OF ENTIRE PROJECT—EVIDENCE.

Defendant owners of 4 of 10 parcels involved in 1 of several condemnation proceedings to obtain land for a large civic center have no valid ground for objection that testimony of settlement values as to other parcels was received in evidence as jury could not properly be deprived of evidence of the cost of the entire project as one matter to be considered in the determination of necessity.

9. WITNESSES—ALLOWANCE OF EXTRA COMPENSATION TO EXPERT WITNESSES.

Court's allowance of a sum in excess of ordinary witness fee to expert witness in accordance with his agreement with city, the plaintiff in a condemnation proceeding, made after he had testified, and a matter of which the jury was fully apprised before giving their verdict, afforded no ground for overturning the verdict (CL 1948, § 617.69).

10. EMINENT DOMAIN—CONDEMNATION PROCEEDINGS—INSTRUCTIONS
—NECESSITY—COMPENSATION—PREJUDICE.

Defendant property owners were not prejudiced by instruction
given in condemnation proceeding that jury's first function
was to determine whether or not the proposed public im-
provement was necessary and if found to be so and that it
was necessary to take defendants' property, they were then
to determine the compensation to be made to the interested
parties as their interests may appear.

11. SAME—INSTRUCTIONS—NECESSITY FOR TAKING ALL PARCELS CON-
DEMNED.

Trial court's instruction to jury in condemnation proceeding
that it must find necessity as to all parcels listed in the
proceeding or condemn none of them *held*, not to have
resulted prejudicially to defendants who did not offer any
testimony to overcome or destroy prima facie showing as
to necessity of taking the land for a large civic center
and there were no such wide discrepancies as to values of
land involved as would indicate jury might have determined
some lands were necessary for the undertaking and others
not.

12. SAME—NECESSITY—EVIDENCE.

Trial court's charge to jury in condemnation proceedings to
acquire land for large civic center that resolution of common
council of plaintiff city constituted a prima facie showing
of necessity and his refusal to permit, in determining ne-
cessity, consideration of the fact that commercial building
was prohibited for the most part by order of the presi-
dent of the United States due to the Korean conflict *held*,
proper.

13. SAME—NECESSITY—PRIMA FACIE CASE—BURDEN OF PROOF—IN-
STRUCTIONS.

Resolution of common council of a home-rule city as to neces-
sity for condemning lands for civic center constituted a
*prima facie* showing of such necessity and, where defendants
offered no testimony disputing such necessity, court was
not in error in refusing to charge burden of proving necessity
is on the city and that it was not the burden of the defend-
ants to show that there was no necessity.

14. SAME—VALUE—EVIDENCE—PRIOR SALES.

Possible error of jury in receiving evidence of amount for
which parcel involved in condemnation proceedings had been
sold about 2 years previously was harmless where such amount

was substantially less than city's appraisal and jury awarded compensation in the amount of the city's appraisal.

Appeal from Recorder's Court for the City of Detroit; Maher (John J.), J. Submitted October 14, 1952. (Docket No. 60, Calendar No. 45,598.) Decided January 5, 1953.

In the matter of condemnation of land for civic center and other municipal public purposes, located in area bounded by Woodward avenue, Randolph street, Detroit River and north side of Woodbridge avenue. The jury determined necessity and value of parcels. George S. Salloum and Zahia Salloum appeal. Affirmed.

*Paul T. Dwyer,* Acting Corporation Counsel, and *Bert R. Sogge,* Assistant Corporation Counsel, for plaintiff.

*Francis B. Crowley,* for defendants.

REID, J. This is an appeal from an order of the recorder's court of the city of Detroit confirming a verdict in favor of the city of Detroit, petitioner, finding the necessity for the condemnation of certain lands and the amount of the award to appellants defendants George S. Salloum and Zahia Salloum.

The city council adopted the resolution of necessity for condemning the lands in question together with other lands, on April 4, 1950.

The city filed its petition for the condemnation of the land in question, December 29, 1950. There are 10 parcels involved in the proceeding in which the present appeal was taken, but many other parcels were involved in the general project of a civic center, and there have taken place several other condemnation proceedings relative to that general project.

The jury was impaneled in the presently involved proceeding, February 18, 1952. The jury rendered its verdict on February 26, 1952. Appellants filed a notice of appeal to the Supreme Court as to parcels 1, 2, 3 and 8, March 21, 1952.

The lands are situated on the easterly side of Woodward avenue between Jefferson avenue and the river in the city of Detroit. It appears that a city-county building is in process of construction on lands which lie within the general designation of civic center, and the lands in question in this appeal are located in an area bounded by Woodward, Bates and Atwater streets. Defendants claim that the lapse of 22 months between the adoption by the city of the resolution of necessity in connection with the condemnation proceedings and the inception of the condemnation proceedings in court, was an unreasonable delay and was ground for dismissal. It appears that in the instant case it was necessary on behalf of the petitioner city to require of the city engineer the drawing up of prints outlining the lands taken and it was necessary to check title to lands and do title research; that the only motion for an adjournment was made by Mr. Crowley, the defendants' attorney, and that the city never requested an adjournment. A great amount of effort and a great length of time were required of the corporation counsel's office.

In view of the whole situation, the magnitude of the general undertaking of establishing the civic center with its various buildings, and the acquiring of title to many tracts of land involved, we are satisfied that the city is not to be considered derelict in not sooner instituting the instant proceedings in court.

Defendants claim that in condemnation proceedings under the charter of the city of Detroit, the defendant property owners are entitled each to 5 peremptory challenges. The court ruled that each de-

fendant is not entitled to 5 peremptory challenges but that the defendants are collectively entitled to 6.

There is no right at common law to peremptory challenges. *Matter of Convers,* 18 Mich 459.

Title 8, chap 1, § 6 of the charter of the city of Detroit is in part as follows:

"On the return day of the summons, or on some subsequent day to which the proceedings are adjourned, if no sufficient cause to the contrary has been shown, the court shall make an order that a jury be impaneled in the cause. Such jury shall be composed of 12 freeholders of the municipality, and shall be elected and impaneled as follows: The sheriff, under sheriff, or a deputy sheriff of the county shall, on the same day, or at an adjourned day, make a list of 24 resident freeholders of said city, and the corporation counsel in person or by an assistant or deputy, and the respondents and taxpayers collectively, shall each have the right to strike 6 names from the list of persons written down as aforesaid, and subject to objection for cause and peremptory challenges, the 12 persons whose names are left on the list shall compose the jury for the trial of the cause, and shall be summoned to attend at such time as the court shall direct by venire issued by the clerk of the court, and to be served by one of the officers aforesaid. If the respondents neglect or refuse to strike 6 names from said list, it shall be done by the judge of the court, and in case any of the persons to be summoned cannot be found in the county, or being summoned do not attend, or shall be excused for cause, or otherwise, talesmen possessing the necessary qualifications may be summoned as jurors in the case, by such sheriff or sheriff's officer, or authorized person. * * * No person shall be qualified to act as juror under this chapter who shall have served as a juror in any court of record in said county within 2 years next preceding the time of impaneling such jury. The city on one side and the respondents and taxpayers on the other, shall have the right to challenge peremptorily 3 per-

sons called to serve as jurors in each such proceedings; in the discretion of the judge of said court the number of peremptory challenges may be increased to not exceeding 6 on each side."

We properly held in *Re Slum Clearance Between Hastings, Gratiot, De Quindre and Mullett Streets,* 331 Mich 714, that in a condemnation proceeding instituted under the Detroit city charter, defendant landowners were not entitled each to 5 peremptory challenges. In the instant case, however, defendants bring forward the proposition that in the *Slum Clearance Case,* the question on that particular point was limited to the proposition whether or not the charter provisions, title 8, chap 1, § 6, contravened CL 1948, § 618.40 (Stat Ann § 27.1020), which in part is as follows:

"In all civil cases each party may challenge peremptorily 5 jurors."

Defendants herein cite *In re Matter of Widening Michigan Avenue, Roosevelt to Livernois Avenues,* 281 Mich 95, where it was held that sections 23 and 52 of PA 1931, No 330,[*] repealed and amended the provisions of title 8, chap 1, § 6 of the charter of the city of Detroit insofar as the provisions of section 6 relate to the summoning and impaneling of a jury. Section 23 of said Act No 330 (CL 1948, § 725.123 [Stat Ann § 27.3993]), is as follows:

"Not less than 21 days before the opening of any term of court at which jury cases *will be tried,* or *before the time at which a jury will be needed,* the presiding judge of each court subject to the provisions of this act shall order the board to draw a sufficient number of jurors *for jury service for the first 4 weeks of such term of court.* If the number has not been fixed by the court at the time of the

---

[*] PA 1931, No 330, amended the first 2 sections of PA 1923, No 83, and added 60 new sections.—REPORTER.

drawing, the board shall draw such number of slips from the jury box as it deems necessary for the business of the court for such term, or part thereof, for which jurors are to be drawn." (Italics supplied.)

Section 52 of said Act No 330 (CL 1948, § 725.152 [Stat Ann § 27.4022]), is as follows:

"The names of persons to serve as jurors in condemnation cases in municipal courts of record subject to this act shall be drawn from the jury box in the manner prescribed in this act for the drawing of jurors, but in such case any slip drawn which does not show that the person is a freeholder shall be returned to the jury box."

In sections 23 and 52 and in all other portions of said Act No 330, there is no provision repealing or amending the provisions of the Detroit city charter relating to the *impaneling* as distinguished from the *summoning* of jurors in condemnation cases.

The depositing by the board of slips in "the jury box" and withdrawal of slips with names of jurors from "the jury box" are evidently things to be done before the jurors are *summoned* into court for the term and do not refer to the process of drawing names by the clerk of the court after a particular condemnation case has been begun.

To the extent that the case of *In re Matter of Widening Michigan Avenue, Roosevelt to Livernois Avenues, supra,* holds that sections 23 and 52 of Act No 330 repeal or amend title 8, chap 1, § 6 of the charter as to the selection from the condemnation panel of a jury for the trial of a condemnation case pending in court, we expressly overrule the language used in that case.

The general statute of the State applicable to condemnation proceedings by cities is PA 1883, No 124, as amended. Section 18 (CL 1948, § 213.88 [Stat Ann § 8.60]), provides:

"The practice and proceedings of the recorder's court of the city of Detroit under this act, relating to the summoning and excusing of jurors and talesmen and to imposing penalties upon them for nonattendance, shall be the same as the practice and proceedings of said court relative to petit jurors for the trial of criminal cases, but no peremptory challenges shall be allowed."

It must be noted, however, that section 24 of said act (CL 1948, § 213.94 [Stat Ann § 8.66]) provides:

"Cities and villages now authorized under existing acts of incorporation, or other special acts, to take private property for public uses, may severally proceed, under the provisions of their respective local charters, or other special acts, or under the provisions of this act; and this act *shall not be construed as in any way affecting or impairing* the provisions of such local charters or special acts *on the subject of taking private property for public use.*" (Italics supplied.)

Defendants in their supplemental brief contend that rule No 27 of court rules for recorder's court, city of Detroit, provides for adoption of Wayne county circuit court rules in all civil matters in the recorder's court and the circuit court rules provide 5 peremptory challenges. The express and specific rule in the city charter, title 8, chap 1, § 6, heretofore quoted and commented on, shall be considered as governing the particular situation it covers, rather than the general rule in rule No 27.

The present proceeding being under the city's charter, the trial judge correctly ruled that the defendant owners were collectively limited to 6 peremptory challenges. This is in accordance with title 8, chap 1, § 6, of the charter, which is not, in that respect, repealed or amended.

The trial judge was present when called upon to rule on some disputed point or matter. There is no

merit to defendants' contention that the trial judge should be present at all times during the taking of testimony. In a condemnation case the jury are judges of both facts and law and, after it is impaneled, the presiding judge acts only in an advisory capacity and cannot give binding instructions.

"Proceedings to condemn land are special and summary in character and, while subject to judicial review and supervision for certain purposes, are not judicial proceedings." *In re Huron-Clinton Metropolitan Authority's Petition as to Belleville Lake Park Project,* 306 Mich 373 (per syllabus 8).

See, also, *Detroit Board of Education* v. *Getz,* 321 Mich 676, 679. For further discussion of the province of the jury in condemnation cases, see *In re Owen and Memorial Parks in City of Detroit,* 244 Mich 377 (61 ALR 190), and *In re Widening of Bagley Avenue,* 248 Mich 1.

The present appeal concerns parcels 1, 2, 3 and 8. There has been no contest as to parcels 4, 5, 6, 7, 9 and 10.

There were some statements made before the jury that as to the uncontested parcels, there had been in practical effect, a settlement agreed on, between the owners and the city. Defendants complain that testimony as to settlement values was received in evidence. The court ruled that the settlement values were not proper as a criterion of values of other parcels in contest, but that the jury could not properly be deprived of evidence of the cost of the entire project, as one matter to be considered in determination of necessity, for which ruling the defendants have no valid ground for objection.

Defendants complain that an expert witness who testified for the city had an agreement with plaintiff city for the payment of witness fee exceeding the amount allowed by statute. When the situation was

called to the attention of the trial judge during the trial, he allowed the fee agreed on. Our statute CL 1948, § 617.69 (Stat Ann § 27.918), is as follows:

"No expert witness shall be paid, or receive as compensation in any given case for his services as such, a sum in excess of the ordinary witness fees provided by law, unless the court before whom such witness is to appear, or has appeared, awards a larger sum, which sum may be taxed as a part of the taxable costs in the case. Any such witness who shall directly or indirectly receive a larger amount than such award, and any person who shall pay such witness a larger sum than such award, shall be guilty of contempt of court, and on conviction thereof be punished accordingly."

The words "or has appeared" in the foregoing statute seem to us to indicate that the allowance of the fee can come after the witness has testified. The jury, the sole judges of the law and of the facts, had the whole situation before them before they entered upon their deliberations on their verdict. There is no ground for overturning the verdict because of this situation as to the agreed-on witness fee.

Defendants complain of the following charge of the court given to the jury:

"In this proceeding, you, as the jury have 2 functions to perform:

"First; you must determine whether or not the public improvement proposed to be made is necessary. If you decide it is necessary, then you must determine whether, in making the said public improvement, it is necessary to take the lands described in the petition for the said public improvement.

"Second; if you find it is necessary to make the improvement and take the property described in the petition, you must determine the compensation to be made to the interested parties in said property, as their interests may appear."

Defendants' complaint is that if the jury decide against the necessity for the improvement, then they have but that 1 question to decide, and that it was error to charge them unconditionally and unqualifiedly that they have 2 functions to perform, which might create in the minds of the jury the inference that they have some remaining task to perform. The second proposition was stated so clearly by the court as conditional upon an affirmative finding as to the first proposition that the jury could not be considered to have misunderstood it. No prejudice to defendants could very well have resulted.

Defendants further complain of the following charge by the court:

"I further charge you, that you must find necessity as to all parcels listed in this proceeding. In other words, you can't take some parcels and condemn them and leave out others. It is all, or none."

Defendants had not offered any testimony to overcome or destroy the prima facie showing as to necessity of taking. No such wide discrepancies as to values of the lands involved in this appeal were shown as to suggest that the jury might well, solely from the shown differences in value of the lands sought to be taken, determine the necessity as to some of the lots in question and not as to other lots. Under all the circumstances and state of the record in this particular case, there is no apparent effect of this particular ruling requiring that we set aside the verdict. The jury had been informed by the court that they were sole judges of the law and of the facts, and found necessity as to all the lots in question. The verdict shall stand.

The trial court properly charged the jury that the resolution of the common council of Detroit, prima facie showed necessity, and refused to charge the jury that they had the right, in determining the neces-

sity, to consider the fact that commercial building was prohibited for the most part by order of the president of the United States due to the Korean conflict.

It is not claimed the presidential order forbade the proceeding, but it is well known that the order forbade the use of certain materials for the time being. The city had the right to proceed with the condemnation case and await developments.

In *City of Allegan* v. *Vonasek*, 261 Mich 16, we say at page 21,

"The resolution of this public body, declaring public necessity, pursuant to statute, is prima facie evidence of necessity."

The resolution established a prima facie case; the defendants offered no testimony disputing or tending to disprove necessity; hence the court was not in error in refusing to charge that the burden of proving necessity is on the city and that it is not the burden of the defendants to show that there was no necessity.

During the taking of testimony, the following occurred:

"*A juror:* [in answer to defendants' attorney's question, whether the jury had any questions] Yes, I have. How much did the property sell for?

"*A.* [by Mr. Bigelow, petitioner's witness] It was sold on December 23, 1948 for $13,500. That is parcel # 1."

Defendants rely on absence of showing of no marked change in values or fluctuations in value in the meantime, the fact of remoteness, the voluntary character of the sale, as grounds for their claim that the court by his charge should have stricken out the testimony as to this sale. While the jury could be considered as in error in receiving the testimony without showing qualifying conditions, still the city

appraisal had set $19,000 as the value for parcel 1, and the award made by the jury was for $19,000. Under all the circumstances we consider the error harmless.

The order appealed from is affirmed. Costs to petitioner.

DETHMERS, C. J., and ADAMS, BUTZEL, CARR, BUSHNELL, SHARPE, and BOYLES, JJ., concurred.